CLAYTON et al. v. EXCHANGE BANK OF MACON.

In re JOSEPHSON.

(Circuit Court of Appeals, Fifth Circuit. March 17, 1903.)

No. 1,179.

1. FRAUD ON CREDITORS—WITHHOLDING MORTGAGE FROM RECORD—ENHANCEMENT OF CREDIT—ALLOWANCE OF MORTGAGE DEBT IN BANKRUPTCY.

Code Ga. 1895, §§ 2724, 2727, require mortgages to be recorded, and provide that a failure to record will postpone them to subsequent lienees and purchasers. Section 2695 provides that every conveyance or contract made to defraud creditors—such intention being known to the party taking—shall be void, but a bona fide transaction, without ground for reasonable suspicion, shall be valid. A storekeeper who had done business with a bank for 20 years executed mortgages to it, covering his entire property, consisting of realty, and also his stock in trade then existing and to be acquired. The mortgages were withheld from record, though the storekeeper and bank president both denied any agreement therefor. The storekeeper purchased goods, referring his vendors to a rating in a mercantile agency which he had given without mentioning the mortgages. He filed a voluntary petition in bankruptcy, and on the same day and hour, in response to notice thereof by telephone, the bank recorded the mortgages. The bank president testified that he had no reason to suspect the storekeeper's insolvency until three or four days before his bankruptcy, but admitted that he knew that the recording of the mortgages would have destroyed the storekeeper's credit, and that he knew the mortgagor was going to New York to buy goods, and that the purpose of keeping the mortgages off the record was not to impair his credit. *Held*, that the mortgage debts were not entitled to priority in the bankruptcy proceedings over the claims of the vendors subsequently selling goods to the storekeeper.

McCormick, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of Georgia.

For a period of about 20 years next preceding the year 1900, Simon Josephson was engaged in business as a merchant in Macon, Ga. During all that time the Exchange Bank of Macon (hereinafter called the "Bank") was engaged in the same town in the banking business, and they had dealings for that period as banker and client. In the years 1899 and 1900 Josephson executed and delivered to the bank notes secured by mortgages for sums amounting, in the aggregate, to more than $13,250, as follows: (1) Note made May 9, 1899, due at 6 months, for $5,000, secured by mortgage of same date on real estate in Georgia. (2) Note made September 19, 1899, due at four months, for $750, secured by mortgage of same date on real estate in Georgia. (3) Note made February 16, 1900, due at six months, for $2,500, secured by mortgage of same date on real estate in Georgia. (4) Three notes made March 28, 1900, due August 15, September 15, and October 15, 1900, each for $500, secured by mortgage on real estate, and also on Josephson's stock of merchandise then on hand, and "on future purchases of goods made for the purpose of replacing such stock sold in due course of trade." The foregoing notes were renewed when due, and extended on the payment of interest.

(5) Two notes made July 25, 1900, one due at four months, the other at five months, each for $1,750, secured by mortgage on real estate in Georgia; also on stock of merchandise on hand and to cover future purchases of goods to replenish stock. In January, 1900, Josephson made a statement to Dun's Mercantile Agency showing the net value of his property to be $34,070, but did not mention the mortgages. After executing the last mortgage, he went to New York and bought goods. He referred the wholesale merchants from whom he purchased goods to Dun's Commercial Agency to show his financial condition. He contracted many new debts, and on November 17, 1900, at 5 o'clock p. m., he filed his voluntary petition in bankruptcy. All of the mortgages meantime had been withheld from record. But on November 17, 1900, at 5 o'clock p. m., the bank, by its president, filed all of the mortgages in the superior court of Bibb county, Ga., for record. After Josephson was adjudicated a bankrupt, the bank filed in the district court its proof of claim, founded on the notes and mortgages. It claimed a valid lien on the property described in the mortgages. E. S. Clayton and S. H. Myers, the trustees of the bankrupt's estate, filed objections to the claims. These objections were made in behalf of the unsecured creditors, who became creditors, it is admitted here, after the execution of the mortgages, and while they were unrecorded. The validity of the debts was not contested, but it was denied that the bank had a valid lien or was entitled to priority. The objections relied on here were, in substance, (1) that the failure to record the mortgages before the petition in bankruptcy was filed makes them void under the provisions of the bankrupt act; and (2) that they are void under the common law and statutes of Georgia, because withheld from record under circumstances that make them fraudulent against the subsequent creditors of the bankrupt. The mortgages and notes were in evidence. Only three witnesses were examined—Simon Josephson, the bankrupt; C. E. Leonard, discount clerk of the bank; and J. W. Cabaniss, president of the bank. The pertinent substance and effect of their evidence not stated above will be found in the opinion. The referee in bankruptcy overruled the objections to the mortgages, and held that they were valid liens, and the District Court approved the decision of the referee. The trustees appealed to this court, and it is assigned, with proper specifications, that the District Court erred in the decree rendered.

F. C. Foster and C. Henry Cohen (Foster & Butler, on the brief), for appellants.

A. L. Miller, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The appellants' first contention is that the mortgages executed by Josephson to the bank are void under the provisions of the bankrupt act, because they were not placed on record before Josephson filed his petition in bankruptcy. This view is urged on our attention with great earnestness, and with the citation of many authorities. The view we take of the case, however, makes it unnecessary for us to decide this question.

The appellants' second contention is that the mortgages are void under the common law and the statutes of Georgia. It is conceded by the learned counsel for the appellee that if these mortgages, on the facts shown in the record, are void under the laws of Georgia, they would not be enforced in the federal courts as valid liens against the general creditors of the bankrupt. Etheridge v. Sperry, 139 U. S. 276, 11 Sup. Ct. 565, 35 L. Ed. 171. It is provided by statute in Georgia that a mortgage must be recorded. Code 1895, § 2724.

Mortgages on real estate must be recorded in the county where the land lies; on personalty, in the county where the mortgagor resided at the time of its execution, if a resident of the state. If a nonresident, then in the county where the mortgaged property is. Id. § 2726. The effect of the failure to record mortgages is provided for by statute:

"Mortgages not recorded within the time required remain valid as against the mortgagor, but are postponed to all other liens created and obtained, or purchases made prior to the actual record of the mortgage. If, however, the younger lien is created by contract, and the party receiving it has notice of the prior unrecorded mortgage, or the purchaser has the like notice, then the lien of the older mortgage shall be held good against them." Code 1895, § 2727.

The effect of these statutes, as construed by the Supreme Court of Georgia, is that a judgment obtained before the mortgage is recorded has priority over it, and by the failure to record a mortgage in time the mortgagee risks the precedence of after-acquired mortgages and judgments. Hardaway v. Semmes, 24 Ga. 305; Richards v. Myers, 63 Ga. 763. The contention of the learned counsel for the appellee is unquestionably correct—that the mere failure to record a mortgage does not affect its validity as between the parties, and that the mortgage would remain an incumbrance upon the property, entitled to satisfaction prior to the claim of creditors who had established no liens on the property. But in view of the facts of this case, it will be seen that a proper conclusion can only be reached by considering not only the registration law, but also the laws requiring mortgages and conveyances to be made and held in good faith.

Both by statute and by the common law that prevails in Georgia, certain acts by debtors are made fraudulent in law against creditors and others, and as to them null and void. Among these:

"Every conveyance of real or personal estate, by writing or otherwise, and every bond, suit, judgment and execution, or contract of any description, had or made with intention to delay or defraud creditors, and such intention known to the party taking; a bona fide transaction on a valuable consideration and without notice or ground for reasonable suspicion shall be valid." Code Ga. 1895, § 2695, subd. 2.

In Robinson v. Woodmansee, 80 Ga. 249, 4 S. E. 497, the trial court instructed the jury that:

"If they believed that Robinson made these mortgages, and there was an understanding with the persons receiving them that they should be kept off the record for the purpose of protecting his financial credit, then the mortgages would be fraudulent as to all persons extending credit to Robinson after this date."

The court, commenting on this charge, said:

"We think this part of the charge erroneous. Under the facts of the case, it was not, as a matter of law, fraudulent to agree not to record the mortgages. It is not necessarily a fraud to agree not to record a mortgage. The agreement or understanding may have been made with the most honest intention. It is for the jury to say what the intention was—whether the mortgages were given by the debtor for the purpose of hindering, delaying, or defrauding his creditors. * * * It has been held 'that an arrangement or understanding in regard to withholding mortgages from record until the mortgagors should have trouble did not render the mortgages void, but was

a matter for the consideration of the jury in passing upon the question of fraud.'" 80 Ga. 254, 255, 4 S. E. 500.

The effect of this decision is that an agreement between the mortgagor and mortgagee not to record a mortgage is a badge of fraud, but it does not amount to a fraud in law, that would authorize the court to instruct the jury peremptorily to find the transaction fraudulent, but that the evidence should be passed on by the jury. In the case before us, the proceeding being in accordance with equity procedure and principles, the court has not the aid of a jury, and is required to weigh the evidence, and give it effect according to its weight.

The recording of a mortgage is intended to give notice of the incumbrance on the property. In that regard, it serves the same purpose that the possession of the property by a mortgagee or vendee would serve. In view of that fact, the case of Smith v. McDonald, 25 Ga. 379, contains pertinent observations. In that case a party requested the court to charge the jury that a subsequent creditor has no right to complain of badges of fraud that existed before his debt was contracted. Lumpkin, J., delivering the opinion of the court, and commenting on the requested charge, said:

"It is conceded that if a vendor make an absolute conveyance of land, and continue in possession, it is a badge of fraud, as against creditors. Had Daniel B. Smith abandoned the occupancy of this land before this debt was contracted, counsel might very properly have asked the charge which he did. But Daniel B. Smith not only remained in possession to the time when the debt was contracted, but to the date of the judgment and the levy. The badge continuing then required explanation as against the subsequent debt, as well as against debts existing at the time of the sale. Indeed, the presumption is stronger in favor of the new debts than the old, for they may be supposed to have been contracted upon the credit given to the defendant on account of his possession and apparent ownership of the property."

The evidence, without contradiction, shows that the bank advanced money to Josephson for which the mortgages were given. While a consideration is, of course, necessary to sustain the mortgages, this fact is by no means conclusive of their validity. As said by Bleckley, J., in Phinizy v. Clark, 62 Ga. 623:

"A fraudulent conveyance cannot stand against creditors, whether made to secure a debt or not. The conveyance must be pure. It must be made bona fide, and with no purpose, known to or suspected by the creditor, to hamper and entangle the property as against other creditors, for the sake of hindering or delaying them. If made partly to secure a debt, and partly to hinder, delay, or in any way defraud other creditors, and the creditor taking the deed has knowledge of this latter intention, or grounds for reasonable suspicion, no title will pass as against the other creditors."

And the learned judge added:

"It is enough that we rule there must be no fraud which would vitiate any conveyance under any section of the Code, or any part of the common law in force here, and that no material badge of fraud must be left unexplained."

A mortgage not at first fraudulent may become so by being concealed, "because by its concealment persons may be induced to give credit to the grantor." And omissions to place deeds on record are often held to be instances of secrecy, within the rule. Bump on Fraud. Conveyances (1st Ed.) 82, and cases there cited.

In Hildreth v. Sands, 2 Johns. Ch. 35, Chancellor Kent approved

the proposition which was first announced in Hungerford v. Earle, 2 Vern. 261, that "a deed not at first fraudulent may afterwards become so by being concealed or not pursued, by which means creditors are drawn in to lend their money." This is approved by the Supreme Court in Blennerhassett v. Sherman, 105 U. S. 100, 118, 26 L. Ed. 1080. In Hilliard v. Cagle, 46 Miss. 309, a mortgage is held void against existing and future credits. The principle circumstance relied on was the fact that the grantor retained possession of the property, and the deed was withheld from record, and the mortgagor was thereby enabled to contract debts upon the presumption that the property was unincumbered. The court declared that the natural and logical effect of the conduct of the parties was to mislead and deceive the public, and induce credit to be given to the mortgagor which he could not have obtained if the truth had been known, and the whole scheme was fraudulent as to subsequent creditors. This case did not meet the approval of the Supreme Court of Alabama in Mobile Savings Bank v. McDonnell, 87 Ala. 736, 6 South. 703; but it has been quoted and approved by the Supreme Court in Blennerhassett v. Sherman, supra, in which case a mortgage was held void chiefly because the mortgagee withheld it from record for the purpose of giving the mortgagor a fictitious credit, by means of which he was enabled to contract other debts, which he could not pay. It is true that in that case the mortgagor was insolvent, and his insolvency was known to the mortgagee. Mr. Justice Woods, in delivering the opinion of the court, cites and reviews many English and American authorities, many of which seem to sustain the proposition that, without regard to the solvency of the mortgagor at the date of the mortgage, a mortgage would be void, as against subsequent creditors, if withheld from record, upon agreement between the mortgagor and the mortgagee, for the purpose of giving the latter a fictitious credit. In the case at bar the president of the bank testified that he had no reason to suspect the insolvency of Josephson, but he admits that he knew his condition to be such that the recording of mortgages for about $14,000 on his property would have destroyed his credit.

In Alabama there are statutes requiring mortgages to be recorded. If not recorded, they are made void as to purchasers for a valuable consideration, mortgagees, and judgment creditors having no notice thereof. Code Ala. 1896, §§ 1005, 1006. As in Georgia, the unrecorded mortgage is good as between the parties to it, and is good as against creditors who have not obtained a judgment or other incumbrance on the property. The statute in that state, declaring all conveyances void which are made to hinder, delay, and defraud creditors, is not greatly unlike the statute in Georgia. Code Ala. § 2156. In Lehman v. Van Winkle, 92 Ala. 443, 450, 8 South. 870, the court had occasion to consider the effect of withholding a mortgage from record, lest it might injure the mortgagor's business and credit. The court said:

"But when, as here alleged, the failure to record is not a mere omission, attributable to inadvertence, inconvenience, or negligence, but is an affirmative and intentional withholding from record, with the ulterior purpose

charged in the bill, we cannot be in doubt that the transaction is tainted with actual fraud, which will vitiate it as against subsequent creditors, and the like, who have been drawn into contractual relations with the mortgagors by assuming their apparent to be their real status with respect to the property covered by the mortgage; and this result follows notwithstanding the conveyance is free from infirmity in every other respect."

In Mobile Savings Bank v. McDonnell, 87 Ala. 736, 6 South. 703, after holding, on the particular facts of that case, that the mortgage was not made void, the court indicated that, if it had been withheld from record for the fraudulent purpose of upholding the credit of the debtor, it would have been declared void as against simple-contract creditors whose debts were incurred in the meantime.

In Baker v. Pottle, 48 Minn. 479, 51 N. W. 383, it was decided that if a mortgage is withheld from record by an agreement between the mortgagor and mortgagee, in order that the credit of the former may not be impaired, it is a fraud as to any one who becomes a creditor of the mortgagor, relying upon the false appearance of responsibility thus created. Central Bank v. Doran, 109 Mo. 40, 18 S. W. 836, is to the same effect.

The fundamental principle involved in all of these cases has never been more aptly and briefly expressed than by Lord Denman, C. J., who said that:

"Where one by his words or conduct willfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time." Pickard v. Sears, 6 Ad. & El. 469, 33 Eng. Com. Law Rep. 115.

These authorities and principles seem to be clearly applicable to the facts of this case. The mortgages were withheld from record for the avowed purpose of bolstering the credit of the mortgagor so that he might make other debts. Cabaniss, the president of the bank, who had entire charge of the transactions with Josephson, testified:

"I knew that Mr. Josephson was going to New York to buy goods, and that these loans were not on record. I knew that if I had put them on record I would have destroyed his commercial credit at the time." Again: "I know that, as a business man, that if I had this mortgage recorded it would have destroyed his credit. My purpose in keeping it off the records was not to injure him in making the loan, but to benefit him."

Leonard, the bank's discount clerk, testified that he did not send the mortgages to be recorded, but that he "would have sent them if I had not been told not to."

We learn from Leonard that, in due course of business, he would have sent the mortgages to have been recorded if he had not received instructions to withhold them; and we learn from the president of the bank why those instructions were given. Josephson avails himself fully of the favor conferred on him by the withholding of the mortgages from record. He continues to buy goods, and his new creditors are now contesting, through the trustees, the validity of the mortgages. He never mentioned the mortgages. He furnished the commercial agencies with a statement of his financial condition, but did not disclose the fact that any of his property was mortgaged.

He then referred the merchants from whom he was purchasing goods to the commercial agencies for a statement of his condition. It is a matter of common knowledge that commercial agencies, in obtaining statements of the financial condition of merchants, endeavor to learn if they have incumbrances upon their property. If a merchant gives a mortgage on his property for any considerable sum, the fact is often telegraphed to those agencies by their local attorneys or agents. It is conceded by the president of the bank and the bankrupt that if these mortgages had been recorded the credit would not have been extended to the latter by the creditors who now contest the priority of the mortgages. These mortgages were withheld from record for a period of about 16 months. The mortgagor and mortgagee had had confidential business relations as banker and client for a period of about 20 years. When Josephson was ready to file his petition in bankruptcy, the fact was made known, probably by telephone, to the bank. Cabaniss testified that a short time before this petition in bankruptcy was filed—"probably a day or two"—it dawned upon him that Josephson's statements were not correct, and that "he was not as solvent as he made it appear to me." "Up to three or four days before his bankruptcy, I had full confidence in his solvency and his ability to meet his obligations." But notwithstanding these suspicions, the mortgages were still withheld from record, and it was only after receiving the message by telephone that they were filed for record; and the indorsement on the petition in bankruptcy and the indorsements on the mortgages show that they each were filed "at 5 o'clock p. m., November 17, 1902." In this connection it is significant, to say the least, that the filing for record of the mortgages at any time before Josephson was ready to go into voluntary bankruptcy would have given the creditors opportunity to institute within four months of such record involuntary proceedings against him, which, in view of his insolvency, which doubtless existed, might well have resulted in setting aside all the mortgages as unjust preferences, although actually given more than four months prior to the bankruptcy proceedings. Bankr. Act 1898, § 3, clause "b," [U. S. Comp. St. 1901, p. 3422], and section 60 [page 3445]. It may be that the intentional withholding by the mortgagee of a mortgage from record for the purpose of giving the mortgagor a fictitious credit is sufficient of itself to invalidate the mortgage at the suit of one who credited the mortgagor in ignorance of the incumbrance, and undoubtedly it is made invalid when the mortgagor and the mortgagee agree that it shall be withheld for such purpose. In this case both the mortgagor and the president of the bank testified that there was no agreement on the subject. We have not concluded that there was any express agreement, either oral or written. Without attributing any intentional misstatement to either witness, the circumstances surrounding this case show conclusively, we think, that there was a tacit understanding by both parties to the mortgages that they would not be recorded until it could be done without injury to the credit of the mortgagor. This course was to the interest of both parties. It was to the pecuniary interest of both that the mercantile business of Josephson should continue. Exposure of the

mortgages would, as is conceded, destroy the credit of the debtor and stop his business; and the bank was getting more security by upholding his credit, so that he could purchase more goods, which would stand as an additional indemnity to the bank.

It is a circumstance not without weight that two of the mortgages were on the goods in Josephson's store, and that he was permitted to continue to sell them in his retail business, and that the goods purchased to replenish or enlarge the stock, by the terms of the two mortgages, were included in them. It does not appear that the cash realized by the sale of the goods was applied to the payment of the mortgages. The creditors who seek to avoid the priority of the mortgages are those who sold goods to the mortgagor after the execution of the mortgages, and while they were withheld from record.

Up to the very moment that Josephson filed his petition in bankruptcy, both he and the bank, so far as actions could speak—and they often speak more forcibly than words—asserted that the property of the former was not mortgaged. Both seemingly profited by this course. It seems to us inequitable to permit the bank at the last moment to produce the mortgages, and contradict the assertions made by the conduct of both the mortgagor and the mortgagee, to the injury of those who were misled and deceived. It has been said that, if one is silent when he should speak, he will not be permitted to speak when he should be silent; and is it not also just to say that if one, for improper motive, refuses to claim openly under a mortgage when duty to others requires him to do so, he shall not be permitted to assert such claim when justice to others forbids?

The leading facts that constrain us to a conclusion unfavorable to the appellee may be briefly summarized: The mortgagor and mortgagee had intimate business relations for a period of 20 years. The five mortgages covered substantially all of the property of the former. Two of them embraced a stock of goods which the former was permitted to hold and continue to sell. They also embraced new goods purchased to replenish the stock. The law of the state required mortgages to be recorded to keep them good against junior incumbrances. The recording of the mortgages would have destroyed the credit of the mortgagor. They were withheld from record for about 16 months by the mortgagee for the avowed purpose of bolstering the credit of the mortgagor. The mortgagor made a statement of his financial condition to a commercial agency, suppressing the fact that his property was mortgaged. Going to replenish his stock, he referred the wholesale merchants to the financial statement he had made, but said nothing of the mortgages. He made new debts for goods, which, when bought, came under the two mortgages, and filed a petition to be adjudged a bankrupt, and on the same day and hour the mortgagee, being notified by telephone, filed the mortgages for record. We cannot avoid the conclusion that this conduct was unfair, unjust, and inequitable to the new creditors of the mortgagor, who were imposed upon by the apparent freedom from liens of all of Josephson's property. It is the peculiar province of courts of equity to grant relief in such cases. In this case it is equitable and just to reduce things to that condition which the bankrupt and the bank, through its officers,

made the new creditors believe really existed, and that is done by denying the mortgages priority over the debts contracted by Josephson while the mortgages were withheld to give him fictitious credit.

The decree of the district court is reversed, and the case remanded, with instructions to proceed conforming to this opinion.   Reversed.

McCORMICK, Circuit Judge, dissents.