BEAN v. ORR.

(Circuit Court of Appeals, Fifth Circuit.    November 1, 1910.)

No. 2,080.

1. BANKRUPTCY (§ 350*)—CLAIMS—PRIORITY.

Where a mortgage on a bankrupt's real estate, executed more than four months before bankruptcy, was entitled to priority under the state laws, it was entitled to priority in bankruptcy, under Bankr. Act July 1, 1898, c. 541, § 64b(5), 30 Stat. 563 (U. S. Comp. St. 1901, p. 3448), giving priority to debts owing to any person, who, by the laws of the state or of the United States, is entitled to priority.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 350.*

Effect of national bankruptcy act on state insolvency laws and on assignments for benefit of creditors, see note to Carling v. Seymour Lumber Co., 51 C. C. A. 11.]

2. MORTGAGES (§ 175*)—MORTGAGES ON REAL ESTATE—WITHHOLDING FROM RECORD—EVIDENCE.

Neglect to promptly record a mortgage is not of itself fraudulent as against other creditors of the mortgagor, nor is it made so by the additional fact that brothers-in-law are adverse parties to the mortgage.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 417, 418; Dec. Dig. § 175.*]

3. BANKRUPTCY (§ 340*)—MORTGAGES ON REAL ESTATE—WITHHOLDING FROM RECORD—EVIDENCE.

Evidence held insufficient to show that a mortgage executed by a bankrupt on real property more than four months prior to bankruptcy was fraudulent as to other creditors, though having been withheld from record until less than three months before bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 340.*]

---

Appeal from the District Court of the United States for the Southern District of Georgia.

In the matter of bankruptcy proceedings of the Tysor-Cheatham Mercantile Company. Priority having been denied to the claim of W. R. Bean, as mortgagee of certain real estate of the bankrupt on objection of Oliver Orr, trustee, and such determination having been affirmed by the District Judge, Bean appeals. Reversed, with directions.

On September 1, 1906, G. D. Tysor and R. A. Cheatham formed a corporation at Warrenton, Ga., known as the Tysor-Cheatham Mercantile Company. The capital stock was $10,000 actually paid in, and these two persons were the only stockholders; each taking one-half of the capital stock. Tysor had never been in the mercantile business before, but had been superintendent of a railroad in South Georgia. Cheatham had been in the mercantile business before.

The corporation erected a double front, brick storehouse in Warrenton, at a cost of about $7,600, and bought a stock of new goods for the fall trade.

A few days prior to January 29, 1907, W. R. Bean, of Atlanta, Ga., a brother-in-law of Tysor, went to Warrenton, not on business, but to visit Mr. Tysor and take a few days' rest. While at Warrenton, Bean learned that the Tysor-Cheatham Mercantile Company, although it had a new storehouse filled with a stock of new goods, needed about $4,000 of ready money to pay off some maturing debts. He learned that this was because the crops in that section had been short that year, collections poor, and the company unable to dispose of its goods. Bean offered to let the company have the $4,000. He did not have the money, but told them that if the company would give him a mortgage on the storehouse for $4,000, with 7 per cent. interest, he would get the money from the bank and let them have it. On January 29, 1907, the company gave to Bean a writing as follows:

"$4,000.00                    Warrenton, Georgia, January 26th, 1907.

"Twelve months after date, we promise to pay W. R. Bean or order four thousand and no one hundred dollars ($4,000.00) for value received with interest at 7 per cent. per annum from date and 10 per cent. attorney's fees on principal and interest in case of collection by suit or through an attorney. And to secure the payment of this note I hereby mortgage and convey unto said payee, his heirs and assigns, the following described property, to wit:

"One double brick storehouse and lot in the town of Warrenton, Warren county, Georgia, said lot being the property conveyed to R. A. Cheatham and G. D. Tysor by C. R. Fitzpatrick, M. C. Fitzpatrick and L. A. Cody by deed in fee simple, said deed dated June 7th, 1906, and recorded January 9th, 1907. Said property conveyed by deed by R. A. Cheatham and G. D. Tysor to the Tysor-Cheatham Mercantile Company, January 8th, 1907, said deed recorded January 9th, 1907, in Book JJ, folio 689. Both said deeds attached hereto. And for the consideration aforesaid, I hereby for myself and family expressly waive all homestead rights and exemptions which by laws, state and federal, are allowed to me and my family in any of said described property and all other property real or personal which I now own or may hereafter own or acquire until this debt is fully paid. I also waive the benefit of the exemption of my daily, weekly or monthly wages or salary, especially that earned while in the employ of * * * from garnishment as against the obligation or any renewals of the same.

"Witness my hand and seal the day and year above written.

"The Tysor-Cheatham Mercantile Company,
"By G. D. Tysor,
"By R. A. Cheatham."

All the parties took it for granted at the time that this paper was properly executed and was a good mortgage in every particular. Bean brought this paper contract back to Atlanta and borrowed the $4,000 from the Atlanta National Bank, giving his note for it with the contract as collateral security. He immediately sent the $4,000 to Tysor-Cheatham Mercantile Company, and every dollar of it was paid out to the creditors of that company. Bean's note

to the bank in Atlanta was renewed twice, and it was five months after the first transaction before Bean paid off the balance of the $4,000 to the bank. He then got the note and mortgage contract from the bank, carried it to his place of business in Atlanta, and about two weeks thereafter found the mortgage among his papers. It then occurred to him that it should be recorded. He at once sent it to Mr. G. D. Tysor, at Warrenton, with the request that it be recorded and returned to him, and he testifies that then, say September, 1907, he had no suspicion of his debtors' insolvency. On October 23, 1907, when Tysor attempted to have the mortgage recorded, it was discovered that it was not attested as required by law to permit record thereof, and on that day it was acknowledged and properly attested and then filed for record and recorded in the office of the clerk of the superior court of Warren county, and sent to Bean in Atlanta.

On January 22, 1908, an involuntary petition in bankruptcy was filed by M. C. Kiser & Co. et al. against the Tysor-Cheatham Mercantile Company, and that company was adjudicated a bankrupt on July 15, 1908. On September 29, 1908, W. R. Bean filed his note and mortgage with proof of the same, and sought to set up said mortgage as a preferred claim. To this Oliver Orr, the trustee of said company, filed objections on various grounds. On the hearing of these objections it was shown that G. D. Tysor was a brother-in-law of W. R. Bean, and that Mr. Eckford Fears, the traveling salesman of M. C. Kiser & Co., sold the Tysor-Cheatham Mercantile Company all the goods which they bought from M. C. Kiser & Co., and that he was also a brother-in-law of Mr. Tysor. M. C. Kiser & Co. received $2,000 of the money which Bean loaned the company, and at the time of the bankruptcy the company owed Kiser & Co. about $830. Mr. W. H. Kiser testified that the bill of goods sold the Tysor-Cheatham Mercantile Company in July, 1907, was based on a mercantile report of R. G. Dun, dated March 25, 1907, which report showed a capital of $10,000 paid in, a stock of goods valued at $15,000, accounts and bills $2,800, and real estate of $5,000, making assets $22,800, liabilities $1,000 for merchandise loans from other sources, secured by personal indorsement of Tysor and Cheatham, $4,000. It was contended by Bean that the report showed that the $4,000 was secured by mortgage, but this was disputed. W. H. Kiser also testified that M. C. Kiser & Co. would not have given credit if they had known that there was a mortgage of $4,000 on the real estate.

An agent of R. G. Dun also testified that, when the statement was given him, G. D. Tysor stated that there was nothing on record against the company, but that it owed $4,000 for borrowed money; that this was strictly true, as the mortgage had not yet been recorded.

The latter part of October, 1907, G. D. Tysor, because of ill health, sold his stock in the company to R. A. Cheatham for $4,000.

The answer to Oliver Orr, trustee, to the petition of W. R. Bean to set up said mortgage as a preferred claim, raised only two issues: (1) Whether or not the instrument given by the Tysor Mercantile Company to W. R. Bean, on January 29, 1907, was a mortgage in fact, and whether or not same was really*executed before October 23, 1907, within four months of the filing of the petition in bankruptcy, and whether or not the bankrupt was insolvent at the time the paper was executed. (2) Whether or not the withholding of the instrument, claimed by Bean to be a mortgage for a present valuable consideration, from record January 29, 1907, until October 23, 1907, was done with fraudulent intent and actually operated as a fraud upon creditors of the bankrupt.

Upon the hearing of the case before the referee, he decided the first objection in favor of W. R. Bean, and the second one in favor of Oliver Orr, trustee, and in conclusion the referee, basing his finding upon the second ground above set out, decided that the mortgage could not be set up as a preferred claim, and that Bean was simply a general creditor. To this finding of the referee in bankruptcy, Bean filed exceptions and a petition to review the same. On the hearing of these exceptions, on March 23, 1910, the court overruled all the exceptions and affirmed the judgment and finding of the referee, and denied and disallowed the mortgage of Bean as a valid lien against the estate of the bankrupt. From this decision and judgment Bean appealed to this court and assigned errors covering all the adverse rulings of the referee and District Court.

.C. W. Smith and E. P. Davis, for appellant.
Archibald Blackshear, for appellee.

Before PARDEE and SHELBY, Circuit Judges, and TOULMIN, District Judge.

PARDEE, Circuit Judge (after stating the facts as above). It must be conceded, and the referee practically found, that the agreement in writing between the appellant, Bean, and the Tysor-Cheatham Mercantile Company constituted, under the laws of Georgia, a valid mortgage between the parties and against all creditors except such as may have acquired a lien prior to its proper record—all, unless it was a mortgage void under the laws of Georgia as made with intent to hinder, delay, and defraud creditors. As it was executed more than four months before the involuntary petition of creditors for the adjudication in bankruptcy of the Tysor-Cheatham Mercantile Company, it is not obnoxious to any provision of the bankruptcy law. It would seem to be protected in bankruptcy, if valid, under the laws of Georgia, by section 64(b) of the bankruptcy law (Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447]), reading:

"Debts to have priority except as herein provided and to be paid in full out of the bankrupt's estates and the order of payment shall be * * * (5) debts owing to any person who by the laws of the states or the United States are entitled to priority."

So that the real question before the referee and now before this court is whether the mortgage was fraudulent because made and executed with the intention to hinder and delay or defraud creditors; and this issue is to be decided under the laws of Georgia.

The referee made no specific finding of facts. In his opinion he says:

"It seems to me that this case is controlled by the Clayton Case, above cited [121 Fed. 630, 57 C. C. A. 656]. Although the evidence of the intention on the part of the mortgagee, to allow subsequent creditors to be deceived is more direct in the Clayton Case than in the case at bar, it is hardly more convincing Bean made this loan to the bankrupt company, because Tysor was his brother-in-law and he wanted to help him. Also, he had confidence that Tysor would repay him. If his purpose was to help Tysor, then the withholding of the mortgage from the record must have been in his contemplation, for to have taken such an instrument and then recorded it would have impaired the credit of the company and injured Tysor rather than benefited him.

"For these reasons the objections of the trustee to the priority of payment from the proceeds of the mortgaged property, claimed by W. R. Bean, are sustained."

After a careful reading of the evidence, we are unable to find sufficient facts warranting the holding that Bean acted otherwise than in the utmost good faith, or that he was in any wise a party to any intention to hinder and delay or defraud any of the creditors of the Tysor-Cheatham Mercantile Company, or, at the time of advancing his money to the said company, he had any suspicion that the said company was insolvent. In fact, the case shows that the very $4,000 which Bean advanced on the security in question was full consideration and was intended to be used and was used to pay off creditors, and the propriety and necessity of the loan is shown to have been the dullness

and embarrassment of business, crops being short, collections poor, and that the company was presently unable to dispose of its goods.

It is true that Tysor, of the Tysor-Cheatham Mercantile Company, was a brother-in-law of Bean, and Bean wanted to help him, and he testifies that he had confidence that Tysor could and would repay him; and it is also true under the circumstances fairly explained by Bean that his mortgage was not recorded until some months subsequent to its execution.

It is on these last-mentioned circumstances that the referee held that the mortgage was executed to hinder and delay creditors, relying upon the case of Clayton v. Exchange Bank, 121 Fed. 630, 57 C. C. A. 656, in which this court, in a case where there was a mortgage upon a stock of goods on hand and to be added to by subsequent purchases, and an agreement to withhold the mortgage from record for the purpose of aiding the credit of the mortgagor, and the mortgage was withheld from record until the mortgagor decided to take the benefit of the bankruptcy act, and where there were other circumstances pointing to fraud, held, stressing the withholding from record, that the mortgage was fraudulent under Georgia law, as made to hinder and defraud creditors.

Here the mortgage is on real estate, and the evidence shows at best only suspicion that fraud was intended by either party to it, while Bean, the mortgagee, so far as such showing can be made, vindicates himself of all fraud or intention to defraud or to aid to defraud.

Neglecting to promptly record a mortgage is not in itself fraudulent as against other creditors, and it is not made fraudulent by the additional fact that brothers-in-law are adverse parties to the mortgage.

The decree appealed from is reversed, and the cause is remanded, with instructions to allow the claim of appellant, and pay the same out of proceeds of sale of the mortgaged property in preference and priority to all other claims except costs of sale.