HAWKINS v. DANNENBERG CO. et al.

In re WARLICK BROS. CO.

(Circuit Court of Appeals, Fifth Circuit. November 2, 1918.)

No. 3215.

1. CHATTEL MORTGAGES ⬳196 — WITHHOLDING FROM RECORD — VALIDITY AGAINST CREDITOR.

An unrecorded mortgage on a stock of goods is subject to be vacated as a fraud on subsequent creditors, if withheld from record by agreement or understanding between its parties, so as not to affect mortgagor's credit.

2. APPEAL AND ERROR ⬳1177(6)—REMAND FOR NEW TRIAL—MISAPPREHENSION OF FACT.

It fairly appearing from trial court's opinion that the conflicting evidence, on the question of an unrecorded mortgage on stock of goods being in fraud of subsequent creditors, was not duly considered, because of misapprehension that mortgagee had agreed to sell mortgagor all the goods it needed, and so did not contemplate that mortgagor would seek credit elsewhere, there will be a reversal and remand for new trial.

Appeal from the District Court of the United States for the Southern District of Georgia; Emory Speer, Judge.

Suit by Robert T. Hawkins, trustee of the Warlick Brothers Company, bankrupt, against the Dannenberg Company and others. From an adverse decree, complainant appeals. Reversed, and remanded for new trial.

See, also, 234 Fed. 752.

Max F. Goldstein, of Atlanta, Ga. (Ellis, Webb & Ellis, of Americus, Ga., and Little, Powell, Smith & Goldstein, of Atlanta, Ga., on the brief), for appellant.

Orville A. Park and Edward P. Johnston, both of Macon, Ga. (Hardeman, Jones, Park & Johnston, of Macon, Ga., on the brief), for appellees.

Before PARDEE, WALKER, and BATTS, Circuit Judges.

WALKER, Circuit Judge. This was a bill in equity filed by the appellant, as trustee of Warlick Bros. Company, a bankrupt, praying that a mortgage made in January, 1914, by the bankrupt, to the defendant the Dannenberg Company, be adjudged fraudulent and void as to creditors of the bankrupt. The mortgage was not recorded until July 18, 1914, a few days prior to the filing of the involuntary petition under which the bankruptcy was adjudged. The bill contained averments to the effect that the mortgage was fraudulently withheld from record, with the understanding that the mortgagor would buy merchandise from others who, in ignorance of the existence of the mortgage, might extend credit for goods sold.

The following statement made in the opinion rendered by the District Judge indicates what was relied on to support the conclusion that the mortgage was not withheld from record to give the mortgagor a fictitious credit:

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

253 F.—34

"The Dannenberg Company, who are wholesalers, agreed that they would sell Warlick all the goods he needed. It follows that they did not contemplate that he would seek credit elsewhere. Nor was the mortgage withheld from record to impart to Warlick a fictitious credit, to the injury of those subsequently having dealings with him. Warlick had just failed, and a mortgage for a large amount was already of record against him. It follows that no creditors could have been deceived by the failure to record the subsequent mortgage of the Dannenberg Company."

The quoted statement manifests a material misapprehension of the state of facts disclosed by the evidence in the case. The property covered by the mortgage was the mortgagor's stock of goods, "constant in bulk, but changing in specifics," contained in the Planters' Bank Building in Americus, Ga. The evidence disclosed that at the time the mortgage was made it was known to a representative of the mortgagee, who acted for it in taking the mortgage, that the mortgagor had and was doing business in two stores in Americus, the one in the Planters' Bank Building and another on Lamar street. The mortgage was signed and delivered in the Lamar street store. It was given to secure the payment of the price of about $500 of goods presently sold—

"and all other credits and advances which may be extended to us by the said Dannenberg Company during one year after this date, so that the balance due after making all credits for payments will not exceed $10,000, whether evidenced by note or open account charged in the books of said the Dannenberg Company against us."

The testimony of the representative of the mortgagee, who in its behalf extended the credit evidenced and secured by the mortgage, showed, not, as stated in the above-quoted part of the opinion rendered, that the mortgagee agreed to sell the mortgagor all the goods the latter needed, but that the latter only agreed to buy all the goods it needed for the store containing the mortgaged stock. The evidence did not show the existence of the supposed state of facts relied on to support the conclusion that the mortgagee did not contemplate that the mortgagor would seek credit elsewhere. Having knowledge that the mortgagor was conducting a store or stores other than the one containing the mortgaged stock, for which alone the mortgagee was to sell goods, and that the mortgagor made no promise as to where it would buy goods for such other store or stores, it might well be inferred that the mortgagee contemplated that the mortgagor would seek credit from sellers other than the mortgagee.

It is true that prior to the date of the making of the mortgage the mortgagor had been through bankruptcy, and that at that time a mortgage given by it to secure an amount borrowed to carry out a composition of the debts owing to creditors affected by the prior bankruptcy was on the public record, which did not then show that that mortgage had been satisfied. But undisputed evidence showed that the debt secured by the last-mentioned mortgage was paid in full a considerable time before there was anything on the record to show that it was satisfied, and that the mortgagor bought goods on credit from merchants who were apprised that the debt secured by that mortgage had been paid in full, and who, before such information was imparted to them, sold the mortgagor goods only when the payment of the price

of them was guaranteed by a third party of unquestioned solvency; and it further appeared that the mortgagor so obtained credit for goods sold after the seller was apprised of the payment of the debt secured by the recorded mortgage, and while the mortgage to the Dannenberg Company was withheld from the record and the seller was ignorant of its existence.

In view of the evidence just mentioned, plainly it is an unwarranted conclusion that no creditors could have been deceived by the failure to record the subsequent mortgage to the Dannenberg Company. While the Dannenberg mortgage was withheld from record the mortgagor conducted a store at Dothan, Ala., and bought goods on credit which were consigned to it at that place. Nothing in the evidence indicated that this was contrary to any understanding or agreement between the mortgagor and mortgagee. The evidence plainly indicates that credits were extended by other sellers of goods while the Dannenberg mortgage was withheld from record, which would not have been obtained if the existence of that mortgage had been known to such other creditors.

[1, 2] The mortgage in question was subject to be vacated as a fraud upon creditors, if it was withheld from record by agreement or understanding between the parties to it, so as not to affect the mortgagor's credit. Clayton v. Exchange Bank, 121 Fed. 630, 57 C. C. A. 656; National Bank of Athens v. Shackelford, 208 Fed. 677, 125 C. C. A. 575. The evidence on the subject was conflicting. It consisted mostly of oral testimony given in the presence of the trial judge. The conduct of the mortgagor's representative who executed the mortgage in its behalf was such as plainly to indicate to the mortgagee's representative that secrecy was desired. In the course of his testimony the latter stated:

"Mr. Warlick had two stores, and I went to both stores. We went to the Planters' Bank Building store, and, being smaller, more crowded, he suggested that we go around to the Lamar street store, where the clerks would not overhear our conversation, and we went there, and sat way off in a corner under the steps."

Warlick stated that the mortgagor's representative, with whom he dealt when the arrangement for a credit was made, said, with reference to the paper which was signed, that—

"It was just a paper between him and myself, and nobody would know anything about it except us; he would put it in the back end of his safe; the safe was in the room, and no one would know anything about it."

The person to whom that statement was attributed denied that anything like it was said. When asked why he did not put the mortgage on record, he first said that it was not necessary. Afterwards he said it was carelessness. It fairly appears, from the opinion rendered by the trial judge, that this conflicting evidence was not duly considered, and that the court, in reaching its conclusion, was influenced by the supposed existence of attending circumstances not disclosed by the evidence. We will not undertake to pass on the conflicting evidence, as obviously the trial court is in a better position to weigh it properly. The opportunity for it to do so uninfluenced by unwarranted considerations

will be afforded by reversing the decree appealed from and remanding the cause.

In the course of the argument the ruling made by this court in the case of Martin v. Commercial Bank of Macon, Ga., 228 Fed. 651, 143 C. C. A. 173, was called to our attention. There is an obvious distinction between the facts of that case and those of the instant one. The conclusion that there was an absence of fraud in withholding from record the mortgage in question in that case was supported by a finding, sustained by the evidence, that when the mortgage was given it was expressly stipulated that no subsequent credit should be given. Not only was no such stipulation shown by the evidence in the instant case, but at the time the mortgage here in question was made the mortgagee was apprised that the mortgagor's situation and business occupations were such that it was to be anticipated that it would seek credit from sellers of goods other than the mortgagee. The evidence was such as to justify an inference that the mortgagee was aware that the mortgaged stock of goods was really subject to no incumbrance other than the mortgage in question. Other sellers of goods on credit, who were apprised of the actual satisfaction of the only incumbrance disclosed by the public records, may well have been influenced to extend credit by the buyer's apparent unincumbered ownership of the considerable stock of merchandise in the Planters' Bank Building store in Americus.

Reversed.