**NEVILL v. PERKINS.**

No. 3946.

Court of Civil Appeals of Texas. Texarkana.

June 4, 1931.

Rehearing Denied June 18, 1931.

862

H. L. Carpenter, Neyland & Neyland, and Clark, Harrell & Clark, all of Greenville, for appellant.

Smithdeal, Shook, Spence & Bowyer, of Dallas, and L. L. Bowman and B. M. McMahan, both of Greenville, for appellee.

LEVY, J.

The appellant, as trustee in bankruptcy of S. B. Brooks, brought the suit against the appellee in remedy by way of cancellation of three certain deeds of trust dated respectively January 4, 1925, October 5, 1926, and October 21, 1927, securing certain mentioned indebtedness. The allegations, in effect, are that the deed of trust executed by S. B. Brooks to the appellee are voidable as to creditors because (1) the dates appearing on the face of the deeds of trust were not true, but were antedated, and the deeds of trust were, in fact, executed at a date within four months of the filing of the petition in bankruptcy, the defendant having reasonable ground for belief that S. B. Brooks was insolvent, and that giving him a lien upon real estate by deed of trust to secure the indebtedness set out would effect a preference lien over other creditors of the same class, and (2) the consideration for the deeds of trust was illegal, being money advanced and provided for speculation in illegal transactions. It was further pleaded, in effect, that the defendant was estopped from enforcing the deeds of trust as valid liens against the general creditors of the bankrupt, S. B. Brooks, because (1) the defendant and S. B. Brooks with common design and purpose acted together in concealing the facts of the insolvency of S. B. Brooks, by withholding from record, and by failure to record, the deeds of trust with the view of not impairing the credit of S. B. Brooks, and (2) the defendant intentionally assisted and agreed with S. B. Brooks to withhold the deeds of trust from record so as not to impair and for the enhancement of the credit of S. B. Brooks and to give S. B. Brooks a fictitious credit, and (3) because by the negligent acts of the defendant of withholding from the record, and the concealment of the execution of the deeds of trust, persons who were unsecured creditors were induced to give credit to S. B. Brooks. The petition also sought to recover the rents arising from the real estate covered by the deeds of trust collected by the defendant since the filing of the petition in bankruptcy of S. B. Brooks.

The defendant pleaded facts that go in special denial of the allegations of the petition.

On December 30, 1927, certain unsecured creditors of S. B. Brooks filed a petition asking that he be adjudged a bankrupt, and on January 28, 1928, he was formally adjudicated a bankrupt. The appellant was appointed and qualified as the trustee. At the time of the bankruptcy S. B. Brooks was indebted to various banks and persons in unsecured claims in the amount of $279,363.92, and in secured claims in the amount of $37,-805.58. The assets of the estate, above the property covered by the deeds of trust in suit, totaled $11,810, and were all incumbered "greater than the value." In addition to the above indebtedness owed by S. B. Brooks was the indebtedness claimed by the appellee, and purporting to be secured by the three deeds of trust in suit, totaling about $114,000. The deed of trust appearing as first executed to the defendant by S. B. Brooks bears the date of January 4, 1925. As this instrument recites the consideration therefor was "the sum of $1.00" and "for the further purpose of securing said S. B. Perkins for any sums of money he may have or may hereafter advance to me by open account, note, or otherwise." At the time of the trial some fourteen notes aggregating about $85,000 was claimed to be owing. The second deed of trust was executed by S. B. Brooks to secure, as recited, payment of $20,000, evidenced by note. The deed of trust bears date of October 5, 1926. The third deed of trust was executed by S. B. Brooks to secure, as recited, payment of $9,-000, evidenced by note. The deed of trust bears date of October 21, 1927. The three deeds of trust were all filed for record by defendant on the same day of "the 8th day of December, 1927."

It was proved that for some years prior to the date of the bankruptcy, S. B. Brooks was the cashier of the First National Bank of Greenville. The First National Bank of Greenville, because of insolvency, went into liquidation on December 24, 1927. S. B. Brooks was believed to be prosperous and well-to-do financially up to the time of the

liquidation of the bank. He was generally reputed to be a successful business man, and to have accumulated a lot of property in real estate, bonds, and stocks, including a number of shares in the bank of which he was an official. Many people, as shown, dealt with S. B. Brooks for and during a considerable period of time before the bank failure, and loaned him money in the belief and understanding that he was wholly solvent, and had not executed any deeds of trust upon his property. As a fact, as the evidence shows, S. B. Brooks had borrowed money and was owing various banks and persons a very considerable sum of money before the bank failure. The evidence goes to show that he was insolvent for at least more than a year before the bank failure. From 1924 until December, 1927, as shown, S. B. Brooks bought and sold cotton, wheat, stocks, and other commodities on the different exchanges. The defendant testified that he loaned and procured for S. B. Brooks money at various times and aggregating a considerable amount. S. B. Brooks, it would seem, used the money in his various operations on the exchanges. In some of the transactions on the exchange S. B. Brooks and the defendant had joint and equal interest. As testified by the defendant, "Yes, we shared fifty-fifty in transactions where I had an interest." These joint transactions were in cotton, wheat, and stocks, part of the purchase price being paid when the order of purchase was given, and the "margin" paid when required. The defendant stated that he loaned and procured for S. B. Brooks as much as $80,000 "on the same day," which was March 17, 1925. Although not shown in affirmative testimony, yet the conclusion rests in inference arising from the evidence, that, at or about the time of the execution of the several notes involved in this suit, the defendant and S. B. Brooks had transactions in commodities on the exchange. The jury would be authorized to infer, as in their province, from the evidence as a whole that the defendant provided and advanced money at many times to S. B. Brooks, for the specific purpose of being used on the exchange for gain and benefit through pure speculations, where actual delivery of the commodities was not contemplated. While the defendant denied that he knew that S. B. Brooks "was insolvent," yet he says that he did know that "he was not in good financial condition" for more than a year before the petition in bankruptcy was filed. In a letter of January 5, 1928, the defendant wrote the addressee of the letter: "If you will remember, more than a year ago you wanted me to make some loans to Mr. Brooks which I declined to do, for the reason that I knew that he was in bad financial condition, but I could not tell you more than I did." An extended statement of the evidence is not undertaken to be set out, and merely the pertinent substance and effect is outlined.

The case was submitted to the jury upon special issues. The findings of the jury are, in effect, that (1) at the date of the deed of trust of January 4, 1925, S. B. Brooks was not insolvent; (2) that the various sums of money referred to in the deed of trust of January 4, 1925, were not used for the joint benefit or gain of S. B. Brooks and the defendant through illegal speculations; (3) that the deed of trust of January 4, 1925, was not withheld from the record with the view or purpose of not impairing the credit of S. B. Brooks; (4) that there was no agreement or understanding between defendant and S. B. Brooks to withhold from record the deeds of trust of January 4, 1925, and October 5, 1926, or either one of them.

The decree of the court established the indebtedness owing the defendant, and the lien of the deeds of trust as valid and existing, and foreclosed the liens on the property mentioned.

█ At the time the main charge of the court was submitted, the appellant entered the special objection, and here predicates error upon "requiring an answer to issue No. 6 only in the event the jury answers No. 5 'Yes.'" The court's instructions to the jury' that were excepted to read:

"Question No. 5: Were the various sums of money advanced to S. B. Brooks by S. B. Perkins, and referred to in the deed of trust of date January 4, 1925, used by S. B. Brooks for their joint benefit in illegal speculations, as that term is defined in paragraph two of this charge? Answer 'Yes' or 'No' as you may find the fact to be.

"If you have answered the next preceding question 'Yes,' then you will answer the following question, but if you have answered it 'No,' then you need not answer the following question.

"Question No. 6: Did S. B. Perkins make the different advancements of money, which the deed of trust dated January 4, 1925, intended to secure, in order that S. B. Brooks might use the money in illegal speculations? Answer 'Yes' or 'No' as you may find the fact to be."

The appellant also predicates error upon the refusal to give the requested special issue reading: "Question No. 9: Did S. B. Perkins make the different advancements of money to S. B. Brooks, as shown by the evidence, with the intention and expectation that the said S. B. Brooks would repay said monies earned from illegal speculation, as that term is defined in paragraph two of the main charge?"

It is believed by the court that the above assignments of error should be sustained, as substantial error requiring a reversal of the judgment.

In his suit, the trustee seeks to vacate the deeds of trust in evidence as being fraudu-

864

lent conveyances against creditors, upon the ground, besides others, that the debts for which the deeds of trust were given constitute an illegal consideration. The allegations were, in effect, that the consideration for the deeds of trust was money advances and provided for benefit and gain through illegal speculations in commodities. And the above three questions referred to were intended to cover the three distinct and separate phases involved in the alleged illegal consideration, as viewed from the evidence. Speaking broadly of the facts, it may not fairly be said, as we conclude, that the three distinct issues did not fairly arise from the evidence. Question No. 5 required the jury to make findings concerning whether or not there was advancements of money by defendant to be used by S. B. Brooks for "their joint benefit" or gain through illegal speculations. Question No. 6 required the jury to make findings concerning whether or not there was advancement of money by defendant for use by S. B. Brooks for his own separate gain or benefit through illegal speculations. The two questions' relate to distinct transactions. The ninth question required the jury to make findings concerning still another method or transaction of whether or not there were advancements of money by the defendant, upon the understanding of the repayment of such advancements out of the gains of "illegal speculations." See 27 C. J. § 209, p. 527; Ibid, § 304 p. 1074; Lewis v. Alexander, 51 Tex. 578; Cleveland v. Taylor, 49 Tex. Civ. App. 496, 108 S. W. 1037; and other cases.

■■ In view of the reversal, the further assignments of error are not deemed necessary to be discussed. It will be observed in passing, however, that the deeds of trust, especially the one of January 4, 1925, was not registered until the 8th day of December, 1927. Two issues respecting the failure to record the deeds of trust were submitted to the jury, but the vital issue of negligent failure to record was not, and had it been requested should have been, submitted to the jury for finding thereon. The evidence goes forceably to show that the defendant knew of the bad financial condition of S. B. Brooks for at least a year before the adjudication of bankruptcy. His failure to record the deeds of trust during that whole period of time presented a matter of jury finding of negligence or not. It is the policy of the law to encourage prompt recording of instruments affecting the title to real estate. The statute has expressly stated the consequences which result, as a matter of law, from the failure to record deeds of trust. Article 6627, R. S. And the fraudulent conveyance as to general creditors may take the form of concealment of insolvency by either intentional or negligent failure to record a deed of trust. Clay-

ton v. Bank of Macon (C. C. A.) 121 F. 630; Manders v. Wilson (C. C. A.) 235 F. 878; Hutchinson v. Bank, 133 Ind. 271, 30 N. E. 952, 36 Am. St. Rep. 537.

The judgment is reversed, and the cause remanded for another trial.