## PERKINS v. NEVILL.
### No. 1637—6062.

Commission of Appeals of Texas, Section A. March 15, 1933.

B. M. McMahan and L. L. Bowman, Jr., both of Greenville, and Smithdeal, Shook, Spence & Bowyer, of Dallas, for plaintiff in error.

Clark, Harrell & Clark, Neyland & Neyland, H. L. Carpenter, and Carpenter & Harris, all of Greenville, for defendant in error.

HARVEY, Presiding Judge.

O. P. Neville, trustee of the estate of S. B. Brooks, bankrupt, brought this suit against the plaintiff in error, S. B. Perkins, in the district court of Hunt county. The object of the suit is to cancel certain deeds of trust executed by Brooks, and to cancel all the notes secured by said instruments; the notes aggregating more than $100,000. The case was tried to a jury on special issues, resulting in a judgment for Perkins. The Court of Civil Appeals [40 S.W.(2d) 861] reversed that judgment, and the case is here on writ of error sued out by Perkins.

The principal deed of trust in controversy bears date January 4, 1925, was filed for record December 2, 1927, and, according to its terms, was executed by Brooks for the purpose of securing all past and future indebtedness of Brooks to Perkins, arising from advancements or loans of money to the former by the latter. All the notes in controversy were given for such advancements or loans of money, and, unless invalid as alleged by the trustee, are covered by the above deed of trust. For this reason, the other two deeds of

trust, of later date, need not be noticed further in this opinion. The two last-mentioned instruments cover a part of the notes covered by the other, but embrace different land.

The notes in controversy were executed by Brooks to Perkins at various times during the years 1925, 1926, and 1927. The petition in bankruptcy was filed against Brooks, in the bankruptcy court, on December 30, 1927, by creditors of Brooks, other than Perkins. Brooks was duly adjudged a bankrupt on January 28, 1928, and Neville was duly appointed trustee.

The grounds for cancellation set up in the plaintiff's petition in the present suit, so far as need to be mentioned, are (1) that the deed of trust bearing date January 4, 1925, was really executed within four months prior to the filing of the petition in bankruptcy against Brooks, while Brooks was insolvent, and therefore constituted a preference under the bankruptcy law; (2) that Perkins is estopped to claim under the instrument, as against the other creditors of Brooks, for the reason that on January 4, 1925, and at all subsequent times, Brooks was insolvent, and Perkins, with knowledge of this fact, withheld said instrument from record, as he did, in order not to impair the credit of Brooks, and thus to enable the latter to contract debts to the various other creditors, which he could not have contracted if the deed of trust had been put of record; (3) cancellation of the deed of trust and all the notes in question because, so the trustee alleged, each of the notes was executed for money advanced or loaned to Brooks by Perkins for the purpose of being used by Brooks in illegal speculation in "futures," either (a) in behalf of himself and Perkins, jointly, or (b) in his own behalf alone.

Relevant special issues were submitted to the jury, and, in answer thereto, the jury found: (a) That Brooks was not insolvent on January 4, 1925; (b) that the deed of trust of that date was not withheld from record, by Perkins, in order not to impair the credit of Brooks; and (c) that the latter did not create any debts to others which would not or could not have been created if the deed of trust had been recorded. Included in the special issues submitted by the trial court to the jury were No. 5 and No. 6, which, together with the accompanying instruction, read as follows:

"Question No. 5. Was the various sums of money advanced to S. B. Brooks by S. B. Perkins, referred to in the deed of trust of date January 4, 1925, used by Brooks for their joint benefit in illegal speculations, as that term is defined in paragraph 2 of this charge? Answer 'yes' or 'no' as you may find the fact to be.

"If you have answered the next preceding question 'yes' then you will answer the following question, but if you have answered it 'no'

then you need not answer the following question.

"Question No. 6. Did S. B. Perkins make the different advancements of money which the deed of trust dated January 4, 1925, intended to secure in order that S. B. Brooks might use the money in illegal speculations? Answer 'yes' or 'no' as you may find the fact to be."

The jury answered "No" to special issue 5, and made no answer to special issue 6. The special issues which were submitted to the jury, other than those to which we have referred, have no material bearing on questions to be discussed.

With respect to matters which are incidental to the question of preference, under the Bankruptcy Law (11USCA), it is sufficient to say that these incidental matters have become immaterial for the following reasons: Even if the deed of trust of January 4, 1925, were executed within four months next prior to the filing of the petition in bankruptcy, the same would not, in any event, be of a preferential character, within the contemplation of the Bankruptcy Law, unless the fact were established that Brooks, at the time same was executed, was insolvent as defined in the Bankruptcy Law. The testimony raised a fact issue in this last-named respect, and no special issue calling for a jury finding as to the insolvency of Brooks, at any time except on January 4, 1925, was either submitted or requested. The issue of the insolvency of Brooks, upon which depended the alleged preferential character of the deed of trust, was therefore waived, and such waiver rendered immaterial the other matters pertaining to that alleged ground for cancellation.

Regarding the issue of estoppel pleaded by the trustee, the jury disposed of that issue when it found, in effect, that the grounds relied on as creating the estoppel did not exist.

It is thus seen that what remains to be said has reference to matters pertaining to the ground for cancellation, alleged by the trustee, which involves the alleged use of the various sums of money in question, in illegal speculations. In this respect the testimony shows, without dispute, that most of the various sums of money were loaned to Brooks for the purpose of being used by him in transactions with brokers, involving purported purchases of stocks and bonds, and of cotton, grain, and the like. As to whether said purported purchases were actual purchases or were mere speculations in "futures," a fact issue arose from the testimony in the case. No special issue calling directly for a jury finding on the fact issue thus raised was submitted to the jury, and none was requested. As to at least one of the notes in question, the testimony does not conclusively show that the money, for which said note was given, was used by Brooks in the alleged spec-

ulative transactions mentioned, or that same was loaned to him for that purpose. In fact, the testimony tends strongly to show that the money for which this note was given was loaned to Brooks for an unquestionably legitimate purpose, and was applied by him to that purpose. At any rate, no special issue respecting the use of the money, for which this note was given, was submitted to the jury, and none was requested. These observations disclose the situation with respect to the questions relating to illegality of the various loans, which will now be discussed.

■■ With regard to the instruction given the jury by the trial court, in connection with special issues 5 and 6, as above set out, the trustee made the following objection: "Said charge errs in only requiring an answer to Issue No. 6 only in the event the jury answers No. 5 'yes.'" The trustee contends, in effect, that this objection was improperly overruled by the trial court, for the reason that special issue 6 related to a distinct issue, presented by pleading and proof, and upon which the trustee relied for recovery; namely, that the various loans from Perkins to Brooks were made for the purpose of aiding Brooks to violate the law by engaging in illegal speculations for the benefit of Brooks alone. In view of the circumstances of the case, it is extremely doubtful that the trustee would be entitled to have a jury finding on special issue 6 as worded. However this may be, the trial court did not err in overruling the objection which was made to the charge. It is settled that, in order for an objection to a charge or instruction, given in connection with special issues, to be of avail, the error sought to be complained of must be pointed out. Isbell v. Lennox, 116 Tex. 522, 295 S. W. 920. The objection presented by the trustee, as did the objection involved in the case cited, did nothing more than call attention to the particular charge against which the objection was directed. As a general rule, an instruction to the jury not to answer a given special issue in case another special issue be answered in a specified way is not improper. Exceptions to the rule depend on the existence of special conditions which render such an instruction improper in the particular case. The objection under consideration did not in anywise indicate what conditions rendered the charge erroneous in this instance. It did not point out the error which would be committed by the giving of the charge. The trial judge was left to speculate as to this. He was under no duty to assume that counsel had in mind the ground of error now urged.

■ The trustee also complains of the refusal of the following special issue requested by him, to wit: "Did S. B. Perkins make the different advancements of money to S. B. Brooks, as shown by the evidence, with the intention and expectation that said S. B. Brooks would repay said moneys by moneys earned from illegal speculations, as defined in paragraph 2 in the main charge?"

Under the circumstances of the case, the refusal of this special issue raises simply the question of law as to whether a contract, arising from the loan of money, is rendered illegal by the bald fact that the lender expected or intended that the loan would be repaid with money illegally acquired by the borrower. The law question as thus raised does not embrace within its scope an unlawful use of the borrowed money by the borrower; or a common design in this respect, on the part of the borrower and the lender; or even that the borrower purposes to commit an unlawful act. It is therefore perfectly clear that the requested special issue was properly refused, unless it be the law that, as regards a loan of money, the mere mental operations of the lender, as to the means by which the borrower will acquire funds with which to repay the loan, will, in case the means thus pictured in the mind of the lender be unlawful, vitiate the loan contract. The law does not go to such an unreasonable extent. That mere mental operations of the lender in the respect mentioned cannot, in the remotest degree, operate to incite the borrower to commit an unlawful act, or in anywise contribute to bring about the commission of an unlawful act, is manifest. We have been cited to no authority, and have found none, which holds that a loan contract, so circumstanced, is illegal. It is fairly well recognized by our courts that even actual knowledge, on the part of the lender, that the borrower intends to put the borrowed money to an unlawful use, does not, of itself, invalidate the loan contract. Labbe v. Corbett, 69 Tex. 503, 6 S. W. 808; McKinney v. Andrews, 41 Tex. 363, 366; Bishop v. Honey, 34 Tex. 245, 252; Lewis v. Alexander, 51 Tex. 578; Bonnie & Co. v. Blankenship (Tex. Civ. App.) 208 S. W. 934; Anheuser-Busch Brewing Ass'n v. Houck (Tex. Civ. App.) 27 S. W. 692, 698; Cleveland v. Taylor, 49 Tex. Civ. App. 496, 108 S. W. 1037. There is as much or more reason for holding, as we do, that the loan contract will not be invalidated by the mere intention or expectation, on the part of the lender, that the loan will be repaid with money illegally acquired by the borrower.

We recommend that the judgment of the Court of Civil Appeals reversing the trial court's judgment be reversed, and the judgment of the trial court be affirmed.

CURETON, Chief Justice.

The judgment of the Court of Civil Appeals is reversed, and that of the district court is affirmed, as recommended by the Commission of Appeals.