# Lehman, Durr & Co. *v.* Van Winkle & Co.

*Bill in Equity for Cancellation of Mortgage, and Account.*

1.   *Mechanic's lien; waiver or forfeiture of, by novation of contract.*
Under a contract for the manufacture and sale of machinery, part of
the price to be paid on receipt of the bill of lading, and the residue
in future installments, a subsequent change in the terms, operating
a novation, extending the day of payment beyond the time within
which a statutory lien might be enforced, and reserving to the vendor
the legal title to the property until payment should be made, is a
waiver and forfeiture of the statutory lien, as against an intermediate
mortgagee.

2.   *Election of remedies by vendor of personal property.*—On a contract
for the manufacture and sale of machinery, the purchaser's note be-
ing taken for a part of the price, and the legal title reserved to
the vendor until payment, an action on the note, seeking to enforce
a statutory lien, is an election to treat the purchaser as a debtor, and
the property as his; and the dismissal of that suit, on advice that the
lien was waived and lost, and the institution of a subsequent suit to
recover the property itself, do not destroy the effect of the election
thus made, nor operate to discharge the debt.

3.   *Unrecorded mortgage; validity as against creditors.*—A mortgage
which is purposely withheld from record, lest it might injure the mort-
gagor's business and credit, is fraudulent and void, not only as against
subsequent creditors dealing with the mortgagor, but as against an
existing creditor who, in ignorance of it, waived a prior lien on the
property, or surrendered any other valuable right.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. JOHN A. FOSTER.

On March 28, 1885, the appellees, E. VanWinkle & Co., contracted with Belser & Parker to manufacture and erect for them the complete machinery for an oil mill and cotton ginnery, to be built at a certain designated place, at and for the price of $12,450; three thousand dollars payable on the receipt of the bill of lading by Belser & Parker, showing the shipment of the machinery, and the balance of the purchase price payable at certain dates, the last payment being on March 1, 1886. In pursuance of this contract, E. VanWinkle & Co. manufactured and erected the mill and ginnery—the work of erection, with the exception of some minor details, being completed about the last part of November, or the first part of December, 1885. On December 11, 1885, E. Van-Winkle, of the firm of VanWinkle & Co., sought a final settlement with Belser & Parker under their contract; and at their request, changed the time and terms of the original contract, so as to give them further and longer time for the payment of the balance due—one payment to be made on February 1st, 1886, another March 1, 1886, and the last December 1, 1886. E. VanWinkle & Co., under this last agreement, took no other security for the deferred payments, except the promissory notes of Belser & Parker, containing a clause reserving to VanWinkle & Co. the title to the machinery sold, until the same was paid for. Prior to this last agreement, Belser & Parker, being indebted to Lehman, Durr & Co., on December 4, 1885, executed to them a mortgage conveying, together with other property, the oil mill and ginnery, and the land on which it was situated.

On June 10, 1890, E. VanWinkle & Co. filed the present bill against the said Belser & Parker and Lehman, Durr & Co.; and prayed that the said mortgage executed by Belser & Parker to Lehman, Durr & Co. be declared fraudulent and void as to complainants; that as against the claim of the complainants the said mortgage be cancelled, annulled and set aside; and that the property conveyed therein, or so much of the proceeds therefrom as may be necessary to liquidate the claim of complainants, be declared subject thereto, and Lehman, Durr & Co. be decreed to account for and pay the same. The averments of the bill, and the circumstances attendant upon the execution of the said mortgage, are sufficiently set forth in the opinion of this court, and need not be repeated in this statement.

There was a decree *pro confesso* against Belser & Parker; but the defendants Lehman, Durr & Co. demurred to the bill. The objections raised by demurrer, and argued by counsel, are

[Lehman, Durr & Co. v. Van Winkle & Co.]

stated in the opinion. Upon the submission of the cause on the demurrers filed, the Chancellor overruled each ground. The defendants Lehman, Durr & Co. prosecute the present appeal, and assign this decree of the Chancellor as error.

WATTS & SON, for appellants.—The bill shows that complainants are mere simple contract creditors of Belser & Parker, without a lien, and have not reduced their claim to judgment. Nor does the bill aver that the mortgage made by Belser & Parker was fraudulent. The complainants, therefore, have no standing in equity.—*Matthews v. Ins Co.*, 75 Ala. 85; *Evans v. Welch*, 63 Ala. 250; *Lehman v. Meyer*, 67 Ala. 396; *Henderson v. McVoy*, 32 Ala. 417; *Pennington v. Woodall*, 17 Ala. 685; *Sanders v. Watson*, 14 Ala. 198; *Reese v. Bradford*, 13 Ala. 837; 1 Brick. Dig., p. 655, § 219; 3 *Ib.* p. 340, § 136. Chancery has no jurisdiction to establish or enforce a statutory lien.—*Walker v. Dainwood*, 80 Ala. 245; *Hanna v. Chandler*, 73 Ala. 390, *Montgomery Iron Works v. Dorman*, 78 Ala. 218; *Bedsole v. Peters*, 79 Ala. 133. Taking the notes, postponing the payment, destroyed the lien.—*Lane v. Jones*, 79 Ala. 156. The facts constituting the alleged fraud should have been specifically averred. *Jones v. Massey*, 79 Ala. 370. The concealment of facts, which prevent the statute of limitations from completing a bar, is no ground for equitable interposition.—*Tillison v. Ewing*, 87 Ala. 350. An unrecorded mortgage is not void. It is simply a postponement of it to subsequently acquired liens.—*Vendall v. Malone*, 25 Ala. 272; *Boyd v. Beck*, 29 Ala. 703; Code, §§ 3022, 3019, 3018. By bringing the action of detinue, the complainants elected to treat the contract of sale as ended; and, therefore, the relation of creditors and debtors ceased.—*Collins v. Whigham*, 58 Ala. 438; *Wilkerson v. Roper*, 74 Ala. 140; *Haynie v. Robertson*, 58 Ala. 37; *Dowdell v. Empire Co.*, 84 Ala. 317; *Jones v. Pullen*, 66 Ala. 310; *Mobile Sav. Bank v. McDonnell*, 87 Ala. 742; *T. & D. Co. v. Hall*, 89 Ala. 628. The mortgage was not fraudulent by reason of the agreement not to record until the law day.—*Tutwiler v. Montgomery*, 73 Ala. 263; *Chadwick v. Carson*, 78 Ala. 116; *Mobile Sav. Bank v. McDonnell*, 87 Ala. 742; Code of 1886, §§ 1810–1811.

ROQUEMORE & WHITE, and SEMPLE & GUNTER, *contra*.—"The intent is deduced from the transaction itself, the inevitable consequence being to hinder, delay or defraud creditors;" and, therefore, the agreement to withhold the mortgage from record until the law day was fraudulent as to the complain-

ants.—*Bryant v. Young*, 21 Ala. 264; *Hartshorn v. Williams*, 31 Ala. 149; *Sims v. Gaines*, 64 Ala. 397; *Hill v. Rutledge*, 83 Ala. 164; *Mobile Sav. Bank v. McDonnell*, 87 Ala. 735; *Balumhassett v. Sherman*, 105 U. S. 117; *Nat. Bank v. Strauss*, 66 Miss. 479; 14 Amer. Rep. 579; *Craigie v. Hadley*, 99 N. Y. 131; *Anonymous*, 67 N. Y. 598.

McCLELLAN, J.—The original contract between E. Van Winkle & Co. and Belser & Parker did not provide for the reservation by the former of the title to the machinery supplied to the latter. Neither did it involve the extension of the times of payment thereunder beyond the period within which suit would have had to be instituted for the effectuation of the lien of material-men. VanWinkle & Co., therefore, so long as this continued to be the contract of the parties, were in a position, upon the delivery and erection of the machinery and the consequent accrual of their debt, to perfect their lien as material-men by taking the statutory steps to that end. This right, however, they lost when, on December 11, 1885, a new, or modified, contract was entered into, which extended the time of payment of one or more of the notes for the purchase-money beyond the latest date at which suit could be brought to enforce the lien (*Lane v. Jones*, 79 Ala. 156); and which in terms reserved the title to them—the retention of title being inconsistent with the theory of a lien, since it is not conceivable that one may have a lien upon property which absolutely belongs to him. The mortgage of December 4, 1885, by Belser & Parker to Lehman, Durr & Co. covered this machinery as well as most of the mortgagor's other property; and while it was secondary to complainant's inchoate lien, and could have been postponed in its operation upon the machinery and the lot of land upon which the same had been, or was being erected, to the satisfaction of that lien, had it been perfected instead of being waived and abandoned by the novated contract of December 11, it was superior to any right complainants acquired by the subsequent reservation of title to themselves. In other words, the mortgage took immediate effect upon the machinery, subject only to the inchoate lien, and that being displaced and lost, it at once operated upon this property without obstruction. It is not to be supposed that VanWinkle & Co. would have so changed their original contract as to have divested themselves of all right to charge the property with the payment of the purchase-money, had they known that to be the effect of the contract of December 11, 1885, and that Belser & Parker were insolvent. The mortgage of December 4, 1885, would have apprised them both of the impotency of the new

contract to charge the property, and of the fact of the insolvency of their debtors, and consequent worthlessness of their personal claim against Belser & Parker.  The bill alleges that the novation, involving, when taken in connection with the mortgage, and on the assumption of its validity, such disastrous results to complainants, would not have been entered into by them had they been advised of the existence of the mortgage.  They say, therefore, that the *concealment*, as they allege, of the mortgage was a fraud upon them, in that thereby they have been drawn into this vital and detrimental change of their contractual relations towards Belser & Parker, and towards the property involved therein ; and they file this bill, not to enforce a lien, for on the facts alleged they have no lien, but to have the mortgage declared void as to them, and the property embraced in it, or the proceeds of such of it as has been sold by Lehman, Durr & Co., subjected to the payment of their claim, which, as now presented, constitutes them simple contract creditors of the mortgagors.  The demurrers, from the overruling of which this appeal is prosecuted, present only two points, which are discussed in the arguments of counsel, or which need be adjudged here.

The first objection to the bill is, that its averments do not show that Belser & Parker owe any debt to complainants, for that, it is insisted, under the novated contract of December 11, they had an election between two inconsistent rights, the pursuit of either of which would defeat the other; that these rights were, on the one hand, to enforce their money claim against Belser & Parker as a debt, which would operate the confirmation of title to the property in them, and, upon the other, to proceed for the recovery of the property in specie under the clause in the notes which reserved the title to complainants, which would operate to extinguish the debt; and that the complainants have elected to proceed in detinue for the property itself, instituting suit to that end against Belser & Parker in the fall of the year 1886, as shown by the bill. If this were all that appears by the bill bearing on the point, it may be admitted, for the purposes of this case, though we expressly refrain from deciding the point, that the debt was thereby extinguished, and, of consequence, the complainants now have no standing in the Chancery Court.—*Dowdell v. Empire Co.*, 84 Ala. 317.

But it is not all.  On the contrary, the bill explicitly avers that Van Winkle & Co., some time in the Spring of 1886, commenced an action of assumpsit on the notes against Belser & Parker and Lehman, Durr & Co., for the purpose of enforcing a contractor's lien to the amount of the notes then due, but

shortly afterwards dismissed the suit, on advice that no lien existed. Here, in our opinion, was an unequivocal election to treat the property as that of Belser & Parker, subject to a lien, the existence of which was, as we have said, wholly inconsistent with the retention of title in the vendors, and to rely solely upon the money obligations the vendees had taken upon themselves. The election, moreover, was made, according to these averments, when every existing fact which could have militated against the course complainants chose to pursue must have been known to them. It was, therefore, binding upon them, and determined all right they theretofore had to treat the transaction as a conditional sale and reclaim the property upon condition broken.—6 Amer. & Eng. Encyc. of Law, pp. 250, 254; Bigelow on Estoppel, pp. 29, 673, 674. A subsequent attempt to pursue the inconsistent right may be defeated by the fact of the former election; but such attempt could not, of course, have the effect of emasculating the right made absolute by the first, and only efficacious, election. The bill shows, we therefore conclude, the existence of a debt due from Belser & Parker to complainants, which could be enforced against them and against property fraudulently conveyed by them.

This brings us to the second objection taken by the demurrers to the bill, that it fails to show that the mortgage to Lehman, Durr & Co. was fraudulent as to the complainants, and as against the debt they now seek to enforce against the property covered by it. The averments of the bill as to the facts relied on to taint the mortgage with fraud are, that on December 4, 1885, Belser & Parker "found themselves largely indebted without cash to pay. Among their general indebtedness there was a large sum, the exact amount of which is unknown to orators, due Lehman, Durr & Co. for money previously advanced without security;" and in order to meet demands then pressing upon them, and to provide means of inaugurating their different business undertakings the coming year, they "needed a large amount of ready money, which they sought to borrow from Lehman, Durr & Co. Lehman, Durr & Co., knowing of their insolvent pecuniary condition, and desiring to get the large balance already due them, offered to advance the desired sum upon a mortgage being made by Belser & Parker. Belser & Parker declined to execute such a mortgage, for the specific reason that *it would affect their credit and standing as merchants,* of which they informed said Lehman, Durr & Co. Finally, it was agreed between and by said Belser & Parker and said Lehman, Durr & Co. that, in order that the credit and standing of said Belser & Parker might not be affected by the knowledge of the existence of such a mort-

gage, it should be actively concealed, by being withheld from record until the law day thereof. . . . . The mortgage was then executed by said Belser & Parker to said Lehman, Durr & Co., upon the express agreement that it should be withheld from the records until the law day thereof; and orators aver that the purpose and intent of the parties thereto was to mislead the public as to the existence of said mortgage, and to give said Belser & Parker an advantage in dealing with their creditors and the public that they would not have were the mortgage recorded." It is further averred that the aggregate value of the property included in the mortgage was $40,000, or other large sum, the exact amount of which is unknown to complainants; that it included all the property of Belser & Parker, except one small stock of goods, worth about $2,000, and not excepting the machinery sold to them by complainants; and that in pursuance of said agreement said mortgagees actively secreted the existence of said mortgage by not recording it till the 3rd day of February—the law day of the mortgage being February 15th, 1886—in the county of Montgomery, where a portion of the property was situated, and not till the 28th day of February, 1886, in the county of Bullock, where the largest and most valuable portion of the real estate conveyed was situated; and that meanwhile the mortgagors continued in the possession of the property.

We are quite convinced that these facts make out a case of fraud on the part of the parties to the mortgage against subsequent creditors, who dealt with Belser & Parker on the assumption of the non-existence of the mortgage, and their consequent apparent solvency. They involve the insolvency of Belser & Parker; a knowledge of it on the part of Lehman, Durr & Co.; a refusal of the former to give the mortgage, on the express ground that it would injure their credit and standing as merchants; a proposition and agreement on the part of the latter to conceal the mortgage, and thereby give to Belser & Parker a credit and standing, which Lehman, Durr & Co. knew they were not entitled to, and which, by reason of facts known only to them, was purely fictitious, enabling the mortgagors to continue in business, contract debts, change their relations under existing contracts on the faith of property which they did not own, but which Lehman, Durr & Co. actively assisted them to present to the world as their property, by allowing them to continue in possession as owners and secreting the only possible evidence of a change of beneficial ownership aside from a change of possession; and all this with the express purpose and intent on the part of the mortgagees, as is alleged, of giving them this fictitious credit and standing to

no other possible end than that they should thereby be enabled to deal with, and to the detriment of, others, to contract debts, gain extensions of old debts, to induce others to forego specific liens, &c., &c., in the trust and confidence reasonably imposed only on the assumption of the non-existence of the facts concealed by the mortgagees, that the property belonged to them unincumbered, and that the solvency which they assumed with the assistance of Lehman, Durr & Co. was real and not delusively apparent merely. Had there been no understanding looking to the concealment of the mortgage by keeping it from the records, no purpose so to do to the end of bolstering up Belser & Parker's credit, but only an unintentional omission to record it, of course, the only effect of not recording it would be to postpone it to after acquired liens. But when, as here alleged, the failure to record is not a mere omission attributable to inadvertence, inconvenience or negligence, but is an affirmative and intentional withholding from record, with the ulterior purpose charged in the bill, we can not be in doubt that the transaction is tainted with actual fraud, which will vitiate it as against subsequent creditors, and the like, who have been drawn into contractual relations with the mortgagors by assuming their apparent to be their real status, with respect to the property covered by the mortgage; and this result follows notwithstanding the conveyance is free from infirmity in every other respect.—*Blennerhassett v. Sherman*, 105 U. S. 100, and numerous cases there cited, and quoted; *Mobile Savings Bank v. McDonnell*, 87 Ala. 736.

It is insisted, however, that the complainants do not present themselves in such attitude to the transaction between Belser & Parker and Lehman, Durr & Co. as to entitle them to the relief they seek, even conceding the infirmity of that transaction. It is very true, that the doctrine they invoke is most usually applied to cases where parties have been drawn in, after the fraudulently concealed transaction, to lend their money or advance their property by an aspect of things resulting from fraudulent concealments as to the solvency of the person to whom property or money is advanced. It is equally true that the contract between complainants and Belser & Parker for the supplies, the purchase price of which constitutes the debt now brought forward, was made, and most of the machinery was delivered under it, before the execution of the mortgage to Lehman, Durr & Co. So that there is no ground to say that they were drawn in, in the first instance, to make advances on a *status* of Belser & Parker which was fictitious and simulated through the connivance and with the aid of Lehman, Durr & Co. But we apprehend

that the doctrine extends beyond the usual instances in the books of its application, and beyond the ordinary statement of it, as drawn out by the exigencies of those instances. In principle, and upon every reason which could obtain with reference to any state of facts, it must include all cases in which a party, although a prior creditor, has, after the transaction complained of, been induced by an apparent state of things, existing delusively only by reason of the fraudulent concealment, to surrender any valuable right he may have had in respect to the collection of his debt. The debt may, for instance, be amply secured by a valid mortgage, and not in fact collectible at all aside from the security. And it can not be tolerated that a misrepresentation or fraudulent concealment which leads him to believe that he may surrender the security, and safely rely upon the debtor's general responsibility and ability to pay, and induced him to do so, would not be a fraud entitling him, at least as against the parties to the fraud, to insist that the apparent should be considered as the real *status*. And so, unquestionably, with respect to the waiver of a lien given by law. Nor can there be any material difference where the surrender is of an absolute right to perfect and enforce an inchoate statutory lien. We apprehend that a correct general statement of the doctrine invoked here would embrace every case where the party complaining has been drawn in to part with money or property or valuable rights, or to change to his detriment the legal effect of existing contracts, in consequence of the fictitious standing given to or allowed to be retained by the party with whom he deals, through and by misrepresentations, or, what is the same in legal contemplation, fraudulent concealments. The bill, we think, presents such a case in its averments which go to show that VanWinkle & Co. waived and abandoned their inchoate contractor's lien in reliance upon a state of facts as to the solvency of Belser & Parker, which the concealment charged to Lehman, Durr & Co. induced them to depend upon.

The decree of the Chancellor overruling the demurrers is affirmed.