### DAVIS v. CASSELS et al.

(District Court, N. D. Alabama, M. D.   January 23, 1915.)

#### No. 7.

1. FRAUDULENT CONVEYANCES ☞99—SETTING ASIDE—EXTENT OF RELIEF.

Where all of the recited consideration for a deed from a debtor to his wife, except $200, was paid the debtor by his wife's father, the fact that the $200 recited to have been so paid was the money of the debtor did not render the conveyance fraudulent as to creditors in its entirety, but only gave them an interest to the extent of the $200.

[Ed. Note.—For other cases, see Fraudulent ·Conveyances, Cent. Dig. §§ 323, 327, 328; Dec. Dig. ☞99.]

2. FRAUDULENT CONVEYANCES ☞208—VOLUNTARY CONVEYANCE—VALIDITY AS TO FUTURE CREDITORS.

It was competent for a husband to give an interest in real estate to his wife as against future creditors.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 631, 633; Dec. Dig. ☞208.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3.** FRAUDULENT CONVEYANCES ⬅208—HUSBAND AND WIFE—GIFTS—LIABILITY FOR HUSBAND'S DEBTS.

A gift of a husband's interest in real property to his wife being valid as against future creditors, the consideration for a subsequent conveyance to a third party, in which the husband and wife joined, belonged to the wife without regard to the time it was actually paid or whether it was actually paid to the husband or the wife, and the money paid was not subject to the husband's debts.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 631, 633; Dec. Dig. ⬅208.]

**4.** FRAUDULENT CONVEYANCES ⬅183—FAILURE TO RECORD DEED—IMPROVEMENTS BY GRANTEE.

Where a wife's money was used to build a house upon a lot, title to which was in her only by virtue of an unrecorded deed, fraudulent as to creditors because not recorded, and because of a fraudulent concealment of the change of ownership, the improvements placed on the lot by the wife, if she participated in the fraud, would follow the fate of the lot and be subject to any debts of the husband created upon the faith of his ownership of the property.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 578-582, 695; Dec. Dig. ⬅183.]

**5.** FRAUDULENT CONVEYANCES ⬅301—CONCEALING CHANGE OF OWNERSHIP—FRAUDULENT INTENT—EVIDENCE.

Evidence *held* to show that conveyances by a husband to his wife were withheld from record and concealed, to avoid impairing the husband's credit, so as to be void as to creditors who gave the husband credit on the faith of his apparent continued ownership.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 904–907; Dec. Dig. ⬅301.]

**6.** FRAUDULENT CONVEYANCES ⬅301—INTENT OF GRANTEE—SUFFICIENCY OF EVIDENCE.

Where a wife's part in transactions whereby her husband conveyed land to her, withholding the deeds from record to prevent an impairment of his credit, consisted of the passive receipt of the conveyances, slight evidence of participation or knowledge of the husband's fraudulent purpose would suffice to charge her with fraud sufficient to invalidate the conveyances.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 904–907; Dec. Dig. ⬅301.]

**7.** FRAUDULENT CONVEYANCES ⬅154—CONCEALMENT OF CHANGE OF OWNERSHIP.

Where the withholding from record of deeds from a husband to his wife for considerable periods of time, during which he contracted debts, was accompanied by other badges of fraud, such as his retention of possession, exercise of dominion and appropriation of benefits, and representations by word or act of his continued ownership, and these elements of fraudulent concealment continued after the deeds were recorded, the recording of the deeds did not end the fraudulent scheme, and the deeds were fraudulent as to creditors thereafter extending credit to the husband on the faith of his ownership, without actual knowledge of the deeds.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 485–492; Dec. Dig. ⬅154.]

**8.** FRAUDULENT CONVEYANCES ⬅154—NECESSITY OF ACTUAL INJURY TO CREDITORS.

In a suit to set aside conveyances from a husband to his wife on the ground that because they were withheld from record, and the change of ownership was concealed, they were fraudulent as to creditors extending credit to the husband on the faith of his ownership, it was not incum-

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

bent on plaintiff to show that the complaining creditors were in fact injured; it being sufficient that it was probable that they might have been injured.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 485–492; Dec. Dig. ☞154.]

9. FRAUDULENT CONVEYANCES ☞154—CONCEALMENT OF CHANGE OF OWNERSHIP.

The withholding from record of deeds from a husband to his wife and the concealment of the change of ownership did not render the deeds fraudulent as to a creditor who became such prior to the execution of the deeds, and who neither remitted any effort or remedy nor released any lien or security because of any misapprehension as to the state of the title.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 485–492; Dec. Dig. ☞154.]

In Equity. Suit by H. G. Davis, trustee in bankruptcy of T. M. Cassels, against T. M. Cassels and others. Decree for plaintiff.

Goodhue & Brindley, Hood & Murphree, and W. J. Boykin, all of Gadsden, Ala., for plaintiff.

W. P. Acker, of Anniston, Ala., and W. J. Martin, of Gadsden, Ala., for defendants.

GRUBB, District Judge. This is a bill in equity, filed by the plaintiff as trustee in bankruptcy of the defendant Thomas M. Cassels to set aside certain conveyances made by him to the defendant Ida B. Cassels, his wife, mediately or immediately, and to divest out of her the title of certain property, which was conveyed by third persons to the said Ida B. Cassels, and which it is alleged was paid for by her husband for her, for the purpose of subjecting it to the claims of the creditors of the bankrupt.

The plaintiff contends: (1) That the conveyances were voluntary and made when the bankrupt was indebted, and are therefore constructively fraudulent as to existing creditors, and that the trustee represents that class of creditors; and (2) that the conveyances were fraudulently concealed with actual intent to defraud creditors, an intent participated in by both the bankrupt and his wife, and for that reason void as to existing and subsequent creditors.

There are three separate transactions assailed by the trustee, which may be designated as: (1) The two mill lots; (2) the Turrentine avenue home place; and (3) the lots and house on Harralson avenue and the 22 vacant lots in Richardson's addition. The circumstances attending each of these transactions are in some respects different. Each requires separate treatment in some respects because of that fact. However, the plaintiff contends that the evidence shows a general scheme to defraud creditors which infected, among others, each and all of the transactions mentioned.

[1] As I see it, the plaintiff has not made out a case as to any one of the assailed transactions, upon the theory that the conveyances were voluntary and voidable as to existing creditors and assailable for that reason by the trustee as the representative of existing creditors. From the evidence, as I construe it, no one of the conveyances was made

after the debts now represented by the trustee were incurred, unless it be the conveyance of the home place as to the debt of Strater Bros. It appears that their claim had accrued but had not been reduced to judgment prior to October 24, 1906, the date of the bankrupt's conveyance of the home place to his wife. I think, however, that the preponderance of the evidence shows that there was a consideration moving to the bankrupt from his wife's father to all but possibly $200 of that recited to have been actually paid. The fact, if it be a fact, that the $200 recited to have been paid in money was the money of the bankrupt and not that of his wife, should not operate, as I see it, to destroy the conveyance in its entirety, but only to give the trustee an interest to that extent in the transferred property.

[2-4] With reference to the $2,600 invested in improvements upon the Harralson avenue lot, it seems to me that this money consisted of the $500 paid the defendant Ida B. Cassels by her father-in-law for purchasing a heating plant and the $2,100 which the defendant T. M. Cassels received after the death of his father from him and deposited to his credit with Cassels Mills in November, 1908. On April 12, 1905, T. M. Cassels conveyed to Ida B. Cassels his interest in real estate in Georgia, previously deeded to him and his brothers and sisters jointly by his father. At this date, as I construe the evidence, none of the debts of T. M. Cassels, outstanding when the petition in bankruptcy was filed, had been created. It was competent for him then to give this interest to his wife as against future creditors. On December 3, 1906, Ida B. and T. M. Cassels conveyed the same interest to Mrs. W. B. Pope for a recited consideration of $2,600. Both deeds were promptly recorded in Georgia. In view of this recital in the recorded deed, it seems to me the fair inference is that the $2,600 subsequently paid to T. M. Cassels or Ida B. Cassels by L. M. Cassels represented the recited consideration of $2,600 in the deed to Mrs. Pope from Ida B. and T. M. Cassels, which the evidence tends to show was agreed to be paid by L. M. Cassels for the transfer of the interest in the Georgia property by Ida B. and T. M. Cassels to Mrs. Pope. If this interest was the property of Ida B. Cassels, as against her creditors, through the voluntary conveyance of it to her by her husband when he was not indebted, the consideration for the transfer of it to Mrs. Pope would belong to Ida B. Cassels rather than her husband, without regard to the time it was actually paid or whether it was actually paid by L. M. Cassels to Ida B. or T. M. Cassels, and would not be subject to the debts of T. M. Cassels. However, it appears from the evidence that the money was used to build a house upon the Harralson avenue lot, title to which was in Ida B. Cassels only by virtue of an unrecorded deed from T. M. Cassels. If this deed was fraudulent as to creditors of T. M. Cassels because not recorded and because of a fraudulent concealment of the change of ownership, the improvements placed on the lot by Ida B. Cassels, if she participated in the fraud, would follow the fate of the lot, and so be subject to any debts of her husband which were created upon the faith of his ownership of the houses and lots, caused by the failure to record the wife's deed to the lots.

220 F.—61

The other contention of the plaintiff is that the deeds were withheld from record by the defendants for the purpose of giving an apparent credit to the bankrupt, to which he would not have been entitled if they had been recorded, and that there was a fraudulent concealment of this change of ownership; that the defendant Ida B. Cassels participated in the fraudulent plan; and that the conveyances affected were therefore fraudulent in fact and void as to existing and subsequent creditors, which classes the trustee in bankruptcy represented.

[5] It is shown that the conveyances, which concerned the transferred property situated in Alabama, were in fact withheld from record for periods of varying length. This, of itself, would not suffice to show fraud. It is essential that it also appear to have been done with the purpose of falsely sustaining the credit of the grantor, and that this purpose be that of the grantee as well as that of the grantor. It is a general principle that actual fraud is never presumed and that the burden of showing it is on the party asserting it—a principle, however, probably of less force, if applicable at all, in cases where the transactions are between husband and wife to the detriment of creditors, as is true of this case. The defendants deny that there was any purpose on the part of either of them to fraudulently conceal the change of ownership in withholding the deeds from record, and that neither of them knew, at least until the defendant Ida B. Cassels was otherwise informed by her brother, of the necessity for record. The record, however, shows that the deed from the defendants to Mrs. Pope for the interest in the Georgia property was promptly recorded in Georgia, and that the deeds to the mill lots were recorded in April, 1911, shortly after the contracts between the defendant T. M. Cassels and Eddins and Hunsaker were entered into. It also shows that there was no visible change of possession of any of the real estate in question from the bankrupt to his wife, accompanying any of the conveyances by him to her; that he took and continued in possession of the real estate, conveyed by third persons to his wife; that he exercised dominion over all the tracts, treating them as his own, collecting the rents and appropriating them to his own use, and using funds from the mill business he was conducting for their improvement. The evidence also tends to show that the bankrupt at varying times represented the property to be his, either expressly or by implication, and that no claim was ever made to it by his wife, and that, until the record of the deeds, no one but the bankrupt and his relations and stenographer were made acquainted with the transfers. The record shows that the bankrupt at the time of his marriage and thereafter owned valuable real estate, and that his wife was without means, and acquired thereafter none except through him, and that at the time the petition in bankruptcy was filed the situation was reversed, the bankrupt being without property and largely indebted, and his wife being the owner of the valuable real estate, which had once been his, or which funds of his had paid for. The evidence shows, also, that the defendant T. M. Cassels' salary was at his instance by the corporation, the Cassels Mills, made payable in advance to avoid its subjection by garnishment to his debts; that his stock in Cassels Mills,

including 10 shares surrendered by Eddins, was put up by him to secure a supposed indebtedness to his brother C. G. Cassels; and that this left him at the time the petition was filed with no property subject to the payment of his debts.

[6] The conclusion fairly deducible from the evidence, most favorably construed for the defendants, is that the deeds were withheld from record with an undefined purpose on the part of the defendants to profit by the withholding, if future exigencies demanded, by preventing the impairment of credit that would necessarily result from placing on record conveyances that would have shown that all of the defendant T. M. Cassels' real estate was in the name of his wife; that the exigency did arise in connection with the said defendant's dealings with Eddins and Hunsaker and others, was availed of by the said defendant, and, after having been so availed of, the deeds to the various lots were placed on record. The fact that title to exclusively business property was taken in the name of the wife, the mill itself and the business connected with it remaining the property of the husband, the fact that title was in the wife not being disclosed by the record or otherwise, in connection with the facts heretofore stated, and others not mentioned but shown by the evidence, seem to admit of no other rational conclusion than that the purpose was to conceal the status of the ownership from prospective creditors of the bankrupt to aid his credit. It may be that the evidence is not full as to the participation of the defendant Ida B. Cassels in this purpose, but this is because the defendant Ida B. Cassels had little or no part in the three transactions through which title was invested in her. If the wife's part in the transactions is the mere passive receiving of the conveyances, it is not to be expected that her active participation in the fraud could be shown. In that event, her husband acts not only as grantor in the delivery of the conveyance, but, largely, as agent for the wife in accepting the conveyance, and his knowledge of his own fraudulent purpose in the transaction should be charged to her. If the husband executed a deed to his wife, without her knowledge and with fraudulent intent, and made delivery by placing it on record for her, it is clear that his knowledge would be imputed to her, since her acceptance was through him only. While this case may not be that strong in its facts, the part of the defendant Ida B. Cassels in the various transactions assailed by the plaintiff was negative and passive, and slight evidence of participation or knowledge would for that reason suffice to charge her.

Without entering upon any extended discussion of the facts, my conclusion is that the evidence satisfactorily shows that the original withholding of the deeds from record and the concealment of the changed status of ownership was with the general purpose of avoiding the impairment of the bankrupt's credit, inevitable from the contrary course, in anticipation of future need; that the necessity thereafter arose, and the withholding and concealment was continued and availed of; that it was only after it had been utilized in the Eddins and Hunsaker transactions (those with Strater Bros. and the Southern Grocery Company were not of sufficient importance to furnish a motive), and had thereby served its purpose, that the deeds were

recorded; and that the defendant Ida B. Cassels is chargeable with knowledge of the bankrupt's intent and purpose. The Distilled Spirits, 11 Wall. 356, 20 L. Ed. 167; McIntire v. Pryor, 173 U. S. 3, 8, 19 Sup. Ct. 352, 43 L. Ed. 606; 9 Encyc. Sup. Co., 693 note.

This conclusion is supported by both the Alabama and federal authorities.

In the case of Seals v. Robinson, 75 Ala. 363, 372, 373, the Supreme Court of Alabama said:

"Another circumstance it is of importance to consider. More than six months passed after the execution of the conveyance before its registration. Whatever may have been the general circumstances of the donor at the time of the execution of the conveyance, and upon this point the evidence is not so clear and satisfactory as it could probably have been made, the fact is that, when the conveyance was delivered to the judge of probate for registration, he was insolvent, and, in but little more than a month thereafter, made a general assignment for the benefit of creditors. During the interval between the execution and registration of the conveyance, he continued in possession, claiming ownership of the property, vouching the ownership as entitling him to credit, and upon the faith of it obtained credit. The omission to register the conveyance is but a fact or circumstance indicative of fraud, and is open to explanation, which, if just and reasonable, would neutralize all unfavorable inferences that may be drawn from it. The only explanation now offered is that the donee was ignorant of the necessity for registration; ignorant that the law required registration to protect her from the claims of subsequent purchasers from the husband, or from the claims of judgment creditors. This is ignorance of law, which cannot be accepted as explanatory of the omission. But she was not ignorant that the husband, after the execution of the conveyance, and before its registration, embarked in a new mercantile enterprise, contracting debts to a large amount. Nor is ignorance of the necessity of registration, or of the duty of giving publicity to the fact that he was not the owner of the property, imputed to him. The evidence is conclusive that he concealed the fact of the conveyance, and represented himself as having title.

"The omission to register the conveyance, the want of notoriety of its existence, the magnitude of the property conveyed, when compared with the value of that which was retained, the attempted reservation of a specific benefit to the donor, which he could hold free from liability for debts, his engagement in business very soon after the execution of the conveyance, obtaining a false credit because of his possession and representations that he was the owner of the property, to which, to say the least, the donee by her supineness contributed, are all badges of fraud, or circumstances indicative that the intent of the donor was the hindrance, delay, and fraud of creditors. Bump on Fraud. Con. 308. It is not of importance whether the intent was directed against present or subsequent creditors; in either event, the conveyance may be successfully impeached by a subsequent creditor. We concur in the conclusion of the chancellor that the conveyance must be deemed fraudulent as to creditors, prior or subsequent, and the decree is of consequence affirmed."

In the case of Mobile Savings Bank v. McDonnell, 87 Ala. 736, 6 South. 702, the Supreme Court of Alabama said:

"This leaves but one ground upon which to maintain the bill, and that is the failure or refusal of the bank to record the mortgage, and the alleged fraudulent motive with which this was done. There may, no doubt, be cases where a deed, or mortgage, not at first fraudulent in its inception, may become so by being actively concealed, or not pursued, 'by which means creditors,' as said in an old English case, 'are drawn in to lend their money.' Hungerford v. Earle, 2 Vern. 261; Hildreth v. Sands, 2 Johns. Ch. (N. Y.) 35. We are not dealing with the case of a deed, where the vendor is left in the possession, contrary to the essential nature and terms of the conveyance, but with a mort-

gage, where continued possession by the mortgagor, for a length of time not unreasonably long, is consistent with the nature of the security."

In the case of Lehman v. Van Winkle, 92 Ala. 450, 8 South. 872, the Supreme Court of Alabama said:

"But when, as here alleged, the failure to record is not a mere omission attributable to inadvertence, inconvenience, or negligence, but is an affirmative and intentional withholding from record, with the ulterior purpose charged in the bill, we cannot be in doubt that the transaction is tainted with actual fraud, which will vitiate it as against subsequent creditors, and the like, who have been drawn into contractual relations with the mortgagors, by assuming their apparent to be their real status, with respect to the property covered by the mortgage; and this result follows notwithstanding the conveyance is free from infirmity in every other respect."

In the case of Blennerhasset v. Sherman, 105 U. S. 100, 117, 26 L. Ed. 1080, the Supreme Court of the United States said:

"But where a mortgagee, knowing that his mortgagor is insolvent, for the purpose of giving him a fictitious credit, actively conceals the mortgage which covers his entire estate and withholds it from record, and while so concealing it represents the mortgagor as having a large estate and unlimited credit, and by these means others are induced to give him credit, and he fails and is unable to pay the debts thus contracted, the mortgage will be declared fraudulent and void at common law, whether the motive of the mortgagee be gain to himself or advantage to his mortgagor. It is not enough, in order to support a settlement against creditors, that it be made for a valuable consideration. It must be also bona fide. If it be made with intent to hinder, delay or defraud them, it is void as against them, although there may be in the strictest sense a valuable or even an adequate consideration. * * * As long ago as the case of Hungerford v. Earle, 2 Vern. 261, it was held that 'a deed not at first fraudulent may afterwards become so by being concealed or not pursued, by which means creditors are drawn in to lend their money.' This doctrine has been repeatedly reaffirmed."

In the case of Clayton v. Exchange Bank, 121 Fed. 630, 633, 57 C. C. A. 656, 659, the Circuit Court of Appeals for this circuit said:

"A mortgage not at first fraudulent may become so by being concealed, 'because by its concealment persons may be induced to give credit to the grantor.' And omissions to place deeds on record are often held to be instances of secrecy, within the rule. Bump on Fraud. Conveyances (1st Ed.) 82, and cases there cited.

"In Hildreth v. Sands, 2 Johns. Ch. [N. Y.] 35, Chancellor Kent approved the proposition which was first announced in Hungerford v. Earle, 2 Vern. 261, that 'a deed not at first fraudulent may afterwards become so by being concealed or not pursued, by which means creditors are drawn in to lend their money.' This is approved by the Supreme Court in Blennerhasset v. Sherman, 105 U. S. 100, 118, 26 L. Ed. 1080. In Hilliard v. Cagle, 46 Miss. 309, a mortgage is held void against existing and future creditors. The principal circumstance relied on was the fact that the grantor retained possession of the property, and the deed was withheld from record, and the mortgagor was thereby enabled to contract debts upon the presumption that the property was unincumbered. The court declared that the natural and logical effect of the conduct of the parties was to mislead and deceive the public, and induce credit to be given to the mortgagor which he could not have obtained if the truth had been known, and the whole scheme was fraudulent as to subsequent creditors."

The plaintiff does not rely upon the effect of the recording acts of Alabama, since they afford no protection to the class of simple contract creditors, alone represented by him. His reliance is upon the principle that a conveyance, the making of which is concealed by the

parties to it, for the purpose of giving the grantor a false appearance of continued ownership, in order to bolster his credit, is a conveyance in hindrance and fraud as to creditors existing and subsequent.

[7] A fraudulent concealment of a change of ownership for the purpose of giving the grantor a false credit has the effect to avoid the transfer as to subsequent creditors, who may have extended credit to the grantor upon the faith of his apparent continued ownership of the transferred property, when otherwise they would not have done so. This fraudulent concealment may avail to avoid the conveyance in the absence of any other infirmity in the transaction, or any other intent to hinder or defraud creditors, and may consist rather ·in the subsequent use made of the conveyance and the property conveyed than in any fraud attending the execution of the conveyance itself. The subsequent withholding of the deed from record and the retaining possession of the property by the grantor, when delivery to the grantee is alone consistent with honesty, and the exercise of continued dominion by the grantor, and representations by him calculated to mislead as to the status of ownership, done with the purpose to create a false basis of credit, may of themselves constitute a fraudulent scheme, though the transaction would be otherwise unassailable by creditors. It will be seen that the fraud in such cases does not consist alone in the withholding of the deed from record; that is but one of the elements of the fraud. Along with it may go the retention of possession and the continued exercise of an inconsistent dominion by the grantor, together with other circumstances or representations calculated to deceive as to the state of the title. If the fraud consisted only of withholding the conveyance from record, it might be that the subsequent record thereof would end the scheme as to all creditors who extended credit after the record, inasmuch as, at the time such debts were incurred, the grantor should not be said then to be guilty of any fraudulent concealment. But where, in addition to the withholding of the conveyance from record, there are other badges of fraud going to make out the fraudulent concealment, such as inconsistent retention of possession and exercise of dominion and appropriation of benefits and representations by word or act of continued ownership on the part of the grantor, the mere recording of the deed, after an interval of withholding, and while the other elements of fraudulent concealment still continue, will not avail to end the fraud, or prevent creditors, who extend credit after the deed is recorded—at least in the absence of actual knowledge on their part of its contents—from claiming their remedy by virtue of it.

Record is, at most, constructive notice. In the absence of actual notice, the creditors may continue to be misled, even after record, by the false appearance of ownership which has been created by the other elements of concealment. Creditors who rely on the general worth of their debtor in extending credit are not accustomed to search the deed and mortgage records for conveyances executed by their debtor, and should not be charged with constructive notice of conveyances so recorded, and are not presumed to have acquired actual knowledge because of such record. A general reputation of ownership created by prolonged possession and the withholding of deeds from record di-

vesting title out of the possessor might well continue for a long period after a subsequent recording of such deeds, and do injury to prospective creditors by still conferring a false appearance of ownership. It cannot be said that such a subsequent recording removes all danger of injury of that character, certainly when other misleading circumstances continue thereafter. The circumstances of this case do not require a decision of the effect of actual knowledge of a fraudulently withheld conveyance on the part of the subsequent creditor. There are Alabama cases cited by the plaintiff which go to the extent of holding that actual knowledge of a fraudulent conveyance will not estop a subsequent purchaser or creditor, going upon the idea that such a conveyance is void as to all but the parties to it. Gilliland v. Fenn, 90 Ala. 230, 8 South. 15, 9 L. R. A. 413; Echols v. Peurrung, 107 Ala. 660, 18 South. 250; Echols v. Orr, 106 Ala. 237, 17 South. 677. These are cases in which the conveyances were fraudulent in their inception rather than by the subsequent use made of them and of their subject matter. In this case there is no evidence that any of complaining creditors, represented by the trustee, had actual knowledge of any of the conveyances before the petition in bankruptcy was filed. The only notice, justified by the evidence, is such constructive notice, if any, as would arise from the subsequent placing of the deeds on record. If they are not to be charged with knowledge by reason of such subsequent record of the conveyances, made before they became creditors of the bankrupt, they are not chargeable at all, and in that event it would be immaterial that the conveyances were recorded before the debts were incurred by the bankrupt.

In view of the fact that the false appearance of ownership in the bankrupt is shown by the evidence in this case to have been contributed to by the inconsistent retention of possession and exercise of dominion and appropriation of benefits, as well as by misleading acts and representations on his part, and that these additional means of concealment of changed ownership continued after the recording of the deeds and until the filing of the petition in bankruptcy, it seems that the recording of the deeds before the incurring of the debts to the complaining creditors should not avail to deprive the trustee from recovering the transferred property for the benefit of the creditors represented by him.

Constructive notice by the recording of a deed fraudulent as to creditors has been held not to estop subsequent creditors in the case of Marshall v. Roll, 139 Pa. 399, 20 Atl. 999, 23 Am. St. Rep. 198; the court saying:

"It was alleged, however, that, inasmuch as the conveyance was made and recorded before the indebtedness to Meyer and Lang, it was not fraudulent as to them. It does not appear that they had knowledge of the conveyance, and the record was not constructive notice to them. Had they been purchasers or mortgagees the case might have been different. Meyer and Lang were mere creditors, and were not obliged to search the records every time they sold a bill of goods. The jury having found that the conveyance was made with the intent to hinder and delay subsequent creditors, there is nothing left for us to discuss."

In the case of McCanless v. Smith, 51 N. J. Eq. 505, 25 Atl. 211, the third paragraph of the syllabus reads:

"A husband paid for, and caused to be conveyed to his wife, a tract of land upon which were a race track and the stabling and other improvements

suited thereto, together with a plain dwelling. He also caused to be conveyed to her other adjoining tracts, which he added to the race-course tract, and expended upon these lands large sums in additional stabling and barns and an expensive clubhouse, and placed upon the premises stallions and mares for breeding purposes, and with his wife's knowledge and acquiescence carried on there the business of breeding horses in his own name, and appeared to the outside world as the owner thereof, while the title stood on the public records in the name of his wife. At the date of the settlement, and thence almost continuously until his failure, he was operating largely upon margins upon the New York Stock Exchange. Held, that subsequent creditors of the husband, who became such in reliance upon such apparent ownership, are entitled to have the lands subjected to the lien of their judgment."

The case of Danner v. Stonewall Ins. Co., 77 Ala. 184, relied upon by defendants, was one in which the agreement to withhold from record was abandoned immediately upon being made and before injury was accomplished by it, and relief was denied because fraud in the absence of injury was not actionable, and no one could have been injured since no one was induced to extend credit because of the abandoned fraudulent agreement. In this case the deeds were actually withheld from record for substantial periods, and the withholding was accompanied by other acts of concealment. It cannot be predicated of this case that no one was induced to extend credit by reason of the fraudulent concealment. If the present creditors had been informed that all of the property of the bankrupt was in his wife's name at the time the credit was extended, it is unlikely that credit would have been extended as it was.

[8] It is not incumbent upon the plaintiff to show that the complaining creditors were in fact in each instance injured; it is enough that the circumstances were such as that it is probable that they may have been injured, provided that the intent to obtain a false credit by a fraudulent concealment is shown to have been present with the parties to the transaction. The cases of Clayton v. Exchange Bank, 121 Fed. 630, 57 C. C. A. 656, and of Lehman v. Van Winkle, 92 Ala. 443, 8 South. 870, only hold that the fraudulent concealment must be shown to have some relation to the extension of credit by the complaining creditors. In a case in which there had been a fraudulent concealment by inconsistent retention of possession and exercise of dominion and appropriation of benefits, after the transfer, and continuing until after the extension of credit, as well as by the withholding of conveyances from record, the subsequent recording of the conveyances, even before the extension of credit, cannot have the necessary effect of removing all chance of injury to creditors who thereafter extend credit. Such record imparts constructive but not necessarily actual notice to prospective creditors of the transfer, and it requires, at the least, actual knowledge brought home to the creditors to remove the presumption of injury.

[9] For the reasons assigned, the plaintiff is entitled to the relief prayed for by him in the bill as to the two mill lots, the Turrentine avenue homestead, the Harralson avenue property, and the 22 lots in the Richardson addition, subject to the bankrupt's right of exemption therein, and with the exceptions to be noted. The Turrentine avenue homestead should not, however, be subjected to the satisfaction of the

debt of Strater Bros., since it was contracted before the conveyance of the home place by the bankrupt to his wife, and any fraudulent concealment of the status of the ownership as to this tract by the withholding of that deed from record, or by other means, could not have misled Strater Bros. into extending a credit, which had in fact been extended before the transfer was made. Nor does the record show that Strater Bros. remitted any effort or remedy or released any lien or security because of any subsequent misapprehension as to the state of title, due to any fraudulent concealment, as was the case in Lehman v. Van Winkle, 92 Ala. 443, 8 South. 870; but, on the contrary, they seem to have pursued their legal remedies for collection with all diligence. Possibly Strater Bros. are entitled to subject the Turrentine avenue tract to their claim to the extent of $200, the amount of money paid by the defendant Ida B. Cassels to L. M. Cassels, as part of the consideration for the conveyance, and which sum she seems to have received from her husband, T. M. Cassels.

However, it is probable that these considerations are not of practical importance, and that a decree in favor of the plaintiff, as trustee, divesting the title to the two mill lots, the Turrentine avenue property, the Harralson avenue property, and the 22 lots in Richardson's addition out of Ida B. Cassels, and vesting it in the plaintiff, and protecting the defendant T. M. Cassels in his right of exemption, and taxing the defendants with the costs, would subserve the necessity of the situation.